Clyde T. CARTER, Doris Carter Corum, and Bernice H. Grant, Ancillary Administrators of the Estate of Harry Lee Carter, deceased, Plaintiffs-Appellees,

v.

Martha B. OLSEN, Defendant-Appellant.

Supreme Court of Tennessee.

Oct. 11, 1983.

Rehearing Denied Nov. 11, 1983.

Charles L. Lewis, Asst. Atty. Gen., Nashville, for defendant-appellant; William M. Leech, Jr., Atty. Gen. & Reporter, Nashville, of counsel.

Thomas V. White, Nashville, Charles E. Murray, Winchester, for plaintiffs-appellees.

## OPINION

DROWOTA, Justice.

The Defendant, Martha B. Olsen, Commissioner of Revenue, appeals from a final order of the Chancery Court restraining her from collecting inheritance taxes on the estate of Harry Lee Carter, deceased.

Harry Carter died on January 27, 1977, leaving an estate containing 48,100 acres of timber property in Franklin County, Tennessee. At the time of his death, he was a resident of Texas. He owned no tangible personal property within Tennessee. The Plaintiffs, ancillary administrators of the Tennessee portion of the Carter estate, duly filed an inheritance tax return for the estate, which valued the timber property at $800,074.42. On October 27, 1977, the Plaintiffs paid $57,661.15 in inheritance taxes. Later, in July of 1980, the administrators filed an amended tax return. That

return valued the property at $3,646,151.42. Based on this new valuation, the administrators paid an additional $314,466.29 in inheritance taxes, which included accrued interest at 8% from the time the first return was filed.

On December 16, 1980, the Defendant delivered to the administrators' attorney, Ervin M. Entrekin, a "Notice of Assessment" on the Carter property, showing the value of the property to be $12,325,000, a difference of $8,678,848.58 over the valuation of the administrators, and assessing inheritance tax and interest of $3,134,-674.98. Apparently, after receiving this notice, Entrekin contacted the commissioner's office to discuss the tax assessment and an appeal to the State Board of Equalization. Notwithstanding these discussions, on January 26, 1981, the Defendant sent a "Final Demand for Payment" to Entrekin, as well as to the law firm of Hickerson and Murray, Bernice H. Grant, Doris Carter Corum and Clyde T. Carter. The demand ordered the recipients to pay the tax assessment or suffer seizure of "all properties, rights to property, monies, credits and bank deposits you now own."

The Plaintiffs filed a complaint in the Franklin County Chancery Court alleging, among other things, that in discussions with agents of the Defendant, the Plaintiffs were assured the Department of Revenue would not pursue collection action during the administrative appeal process at the State Board of Equalization unless the commissioner determined that the collection of the additional assessed taxes was jeopardized because of some matter affecting the property, that the Plaintiffs relied on this information, that they would suffer irreparable injury if the commissioner seized their property, and that there was no adequate remedy at law. The Plaintiffs also alleged the commissioner lacked authority to levy against the timber property because the statutory lien expired. They requested an injunction against the commissioner.

The Chancellor indefinitely stayed all collection processes against the estate pending a final adjudication on the merits of the value of the property, other factual and legal questions raised by the estate in its appeal, or upon the commissioner forming a good faith belief that ultimate collection of the additional taxes are in jeopardy because of a change in conditions surrounding the Tennessee property. The Defendant moved to dissolve the stay order on the ground that T.C.A. § 67–2311[1] precludes any court from interfering with the collection of revenue claimed to be due by the state, and that the agreement asserted by the Plaintiffs was unfounded. Supporting affidavits were filed along with a memorandum of law. The Plaintiffs responded to the motion.

The Chancellor, reviewing the stay order, found this case unique in that "it involves millions of dollars in taxes from a single estate." The court noted the Plaintiffs alleged a failure of the state's lien on the property because the two and one-half year limitation under T.C.A. § 30–1622 had expired. The Chancellor also noted the Plaintiffs pled lack of proper notice.

The Chancellor found that allowing the commissioner to collect the taxes, which could only be done by selling a large portion of the property, before any of the legal questions had been resolved would result in irreparable harm to the Plaintiffs. To the Defendant's argument that the Franklin County Chancery Court lacked jurisdiction to hear the suit, the court cited T.C.A. § 20–4–107 as statutory authority for its jurisdiction. That section provides that any action, the subject matter of which involves real property and the state of Tennessee or any agency of the state is a party, may be

1. "Writs to prevent collection of tax prohibited. —No writ for the prevention of the collection of any revenue claimed, or to hinder and delay the collection of the same, shall in anywise issue, either injunction, supersedeas, prohibition, or any other writ or process whatever; but in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and in no other manner."

properly instituted in any county in which such property is located.

The commissioner filed an application for extraordinary appeal in this Court before the Chancellor issued an order. We found the application premature and dismissed it. The commissioner now appeals directly to this Court pursuant to T.C.A. § 16–4–108.

The commissioner's position, simply stated, is T.C.A. § 67–2311 renders all courts of this state, in their legal and equitable cloaks, powerless to enjoin the commissioner from collecting state revenues. She asserts the proper grievance procedure in all cases is for the taxpayer to pay the assessment under protest and bring suit for a refund. *See* T.C.A. §§ 67–2302 to 2312. The Plaintiff, however, directs our attention to several cases in which the Court has upheld a trial court's injunction against the taxing authority. In *Alexander v. Henderson,* 105 Tenn. 431, 58 S.W. 648 (1900), the plaintiff sought an injunction against the county trustee from collecting taxes assessed against his personalty for state, county and school purposes. The plaintiff alleged the trustee was threatening to levy on property under a paper which was not a writ, command, warrant or authority, and that there was no sufficient description of the property assessed for taxes and that the taxes were excessive. The defendant answered that the state was a necessary party, that the plaintiff's remedy was before the county board of equalization, and that state taxes are forbidden to be enjoined by statute. The chancellor granted the injunction. On appeal, the Court sustained the injunction, holding a court of equity can enjoin void processes.

The Court, in *Hamilton National Bank v. Shipp,* 160 Tenn. 311, 23 S.W.2d 667 (1930), upheld the chancery court's injunction against the county trustee, finding he had no authority to assess taxes on property other than that designated by the legislature. Since the assessment was void, the plaintiff was entitled to an injunction. And

in *Southern Express Co. v. Patterson,* 122 Tenn. 279, 123 S.W. 353 (1909), the plaintiff sought an injunction when the trustee of Hamilton County commenced proceedings to assess taxes on intangible assets of the corporation. The plaintiff argued, among other things, that the general assembly had not by law provided for assessment of this property, and that, therefore, the trustee was without power to assess taxes on the property. The Court agreed and reversed the chancellor's order dismissing the plaintiff's action. An injunction was granted.

■ The above cited cases make it clear the courts of this state do have authority to grant injunctions prohibiting the illegal assessment of taxes. Though those cases dealt with county trustees, we have no trouble extending the authority of those cases to the commissioner.[2] It would be an anomaly indeed if the courts' hands were tied in the face of illegal and void assessments. One of the primary duties of the judiciary is to check other branches of the government when they exceed their constitutional or statutory authority. Could the commissioner, for example, assess a tax against all people who drive a certain color car, in the absence of specific statutory authority? The answer, of course, is emphatically *no.* The assessment is void. And so the taxpayer need not "pay under protest" and the courts will grant injunctive relief against such unauthorized behavior.

■ We recognize that the commissioner assesses taxes on certain property as a result of her reading of a statute, and that oftentimes her reading will differ with the taxpayer's interpretation. These are different cases entirely. Clearly, the commissioner had the authority to assess taxes on property designated by the legislature; and, before judicial determination of the propriety of the assessment, the commissioner as representative of the state is given the benefit of the monies.

**2.** In 1981, the legislature added § 67–2314 to the Code. That section provides that §§ 67–2303 to 2308 inclusive and §§ 67–2310 to 2312

apply to the recovery of all taxes collected by any of the counties of this State.

The Plaintiffs have alleged the State no longer has a lien on the property because the time limitation set out in T.C.A. § 30–1622 expired before the "Notice of Assessment" was received and that representatives of the estate did not receive proper notice of the assessment. They allege irreparable harm would result from a forced sale of the property. They further allege that the commissioner should be restrained from collecting revenues due the State until there is a final determination of the valuation question.

■ The commissioner insists that the only remedy which the taxpayer has to avoid levy is to pay the tax under protest or to post a bond under T.C.A. § 67–6008. However, we recently held in *Barret v. Olsen,* 656 S.W.2d 373 (Tenn.1983) that if the taxpayer "wishes to contest the evaluation of the taxable estate he must follow the administrative procedure set out in T.C.A. § 30–1620, and exhaust his administrative remedy before the State Board of Equalization as provided by T.C.A. § 30–1620, before the courts of this State are authorized to entertain his complaint." But if the taxpayer cannot properly pay under protest and seek relief in court until he has exhausted his administrative remedy, then logic dictates that the commissioner should not be allowed to levy against the taxpayer until after his administrative remedy is exhausted. Otherwise, the taxpayer is precluded from protection against the commissioner's levy.

■ As we stated in *Bracey v. Woods,* 571 S.W.2d 828 (Tenn.1980):

We hold that the plaintiff must exhaust the administrative remedy provided by T.C.A. § 30–1620; that is she must await the hearing and determination of her appeal on the merits by the board before seeking relief in the courts. *Supra* at 829.

Since the only way for the taxpayer to protect against the commissioner's levy is through payment under protest, and this he

cannot do until his administrative remedy is exhausted, then the commissioner should not be allowed to levy until that time. She cannot have it both ways. Either the taxpayer can pay under protest and seek redress in the courts before exhausting his administrative remedy, or the commissioner must refrain from levying upon the taxpayer until his administrative remedy is exhausted. We are of the opinion that the latter course of action is consistent with the commissioner's position and our rulings in the cases of *Barrett v. Olsen, supra* and *Bracey v. Woods, supra.*

In *Fentress County Bank v. Holt,* 535 S.W.2d 854 (Tenn.1976), we recognized an exception to the rule requiring a taxpayer to exhaust his administrative remedies before paying taxes under protest and seeking relief in the courts.

[A] taxpayer ought not to be required in all cases to go through boards of equalization or other administrative procedures in order to raise strictly legal issues. *He may go through these agencies,* of course, *without first paying his taxes. He should,* however, *be permitted access to the courts to raise purely legal questions, but only after he has first paid the taxes under protest.* (Emphasis added). *Id.* at 857.

■ We are of the opinion that the commissioner was without authority in this case[3] to levy against the Plaintiff's property until Plaintiff exhausted his administrative remedy as required by law to do. The record before us fails to indicate that the taxpayer has completed his administrative remedy in the ordinary course. The judgment of the Chancery Court, as modified, is affirmed. Costs of this appeal will be borne by Defendant.

FONES, C.J., BROCK and HARBISON, JJ., and HUMPHREYS, Special Justice, concur.

---

3. There are provisions in the Tax Enforcement Procedures Act under which a levy could be made if the State deemed itself insecure or had evidence that the taxpayer was fraudulently conveying assets.