IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 7, 2001 Session

## SOUTHWEST WILLIAMSON COUNTY COMMUNITY ASS'N, ET AL. v. J. BRUCE SALTSMAN, SR., Commissioner, Tennessee Department of Transportation

Appeal from the Chancery Court for Williamson County
No. 27,222     J. Russ Heldman, Judge

─────────────

No. M2001-00943-COA-R3-CV - Filed August 28, 2001

─────────────

Being dissatisfied with the State's concept of, and planning for, the extension of State Route 840 through southwest Williamson County, three residents in the County, two nonprofit corporations, and a partnership that owns property in the County, sued J. Bruce Saltsman, Sr. ("the Commissioner"), in his official capacity as Commissioner of the Tennessee Department of Transportation ("TDOT"). Following a bench trial, the court below entered a final judgment including (1) a writ of mandamus ordering the Commissioner to perform a number of "duties" in connection with Route 840; and (2) a permanent injunction enjoining him from moving forward with the planning and construction of Route 840 through Williamson County until he complies with the trial court's order. The Commissioner appeals. In addition to other bases for reversal, he asserts that the trial court lacked subject matter jurisdiction of this controversy. We agree with the appellant that the trial court was without subject matter jurisdiction. Accordingly, we reverse the judgment below in its entirety and dismiss the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Petition Dismissed; and Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael W. Catalano, Associate Solicitor General; and Phyllis A. Childs, Assistant Attorney General, for the appellant, J. Bruce Saltsman, Sr., Commissioner, Tennessee Department of Transportation.

David E. Lemke, Nashville, Tennessee, for the appellees, Southwest Williamson County Community Association, Inc., Micaro Properties, Billie Rutledge, Dorothy Beard, and William B. Caldwell.

Julian L. Bibb and Robert C. Hannon, Nashville, Tennessee, for the appellee-intervenor, Heritage Foundation of Franklin and Williamson County, Tennessee.

William L. Penny, Lyle Reid, and Jonathan D. Rose, Nashville, Tennessee, for amicus curiae, Tennessee Road Builders Association.

**OPINION**

I.

This litigation was commenced by the filing of a "Verified Petition for Writ of Mandamus and Injunctive Relief" in the Williamson County Chancery Court. The original petitioners were Southwest Williamson County Community Association, Inc., a Tennessee nonprofit corporation; Micaro Properties, a Tennessee partnership that owns real property in Williamson County; and three individuals, all of whom reside or own property in the County. They were later joined by another nonprofit corporation, Heritage Foundation of Franklin and Williamson County, Tennessee, which the trial court permitted to intervene as a petitioner.

The sole respondent in the suit is the Commissioner. The original petition alleges the following with respect to him and the Department he heads:

> The Tennessee Department of Transportation ("TDOT") is a political subdivision and agency of the executive branch of the State of Tennessee. TDOT's principal office is located at Suite 700, James K. Polk Building, Nashville, Tennessee 37243. Respondent J. Bruce Saltsman, Sr., is the Commissioner of TDOT; his principal office is located at the same address as TDOT.

The petition focuses on TDOT's involvement with State Route 840, especially as it pertains to the portion of the highway to be built in Williamson County:

> TDOT is engaged in the planning, design, right-of-way acquisition, financing, and construction of a four-lane, access controlled highway running from Interstate 40 East (Wilson County) to Interstate 40 West (Dickson County) through Wilson, Rutherford, Williamson, Hickman, and Dickson Counties (the "Southern Loop"), which highway TDOT from time to time calls Interstate 840, I-840, State Route 840, SR 840, or Route 840 (hereinafter "Route 840" or the "Project").

> The Project is in various stages of construction. The Project is currently constructed and opened from Interstate 40 East to Interstate 24 East only. TDOT is only in various stages of planning, design, right-of-way acquisition, financing, excavation, and construction on the remainder of the Project.

-2-

TDOT has created numerous, separate projects for different segments and parts of Route 840 from I-40(E) to I-40(W). Each separate project has been given a separate project number by TDOT. Attached as Exhibit A to this Petition is a copy of a document prepared by TDOT dated July 23, 1997, which identifies some of the various projects and project numbers that make up the entire Route 840.

Those segments of the Project that are proposed to run through the Southwest Community are identified by TDOT on Exhibit A by the County name "Williamson."

No construction has begun on those segments of the Project which are proposed to run from east of Thompson Station Road to southeast of State Route 100 through Williamson County. Moreover, no right-of-way acquisition has even occurred on that segment of the Project proposed to run from east of Thompson Station Road to west of Bending Chestnut Road.

TDOT estimates the Project will not be completed any sooner than the year 2008. Attached as Exhibit B to the Petition is a copy of a document in which TDOT states the foregoing estimate of the date of completion.

TDOT has announced recently its plans to begin the right-of-way acquisition phase of that segment of the Project identified by TDOT as "State Project No. 94840-2221-04 Williamson County," which is proposed to run from east of Thompson Station Road to west of Bending Chestnut Road.

TDOT has also announced recently its plans to solicit bids and let the contracts on that segment of the Project proposed to run from west of Bending Chestnut road to southeast of State Route 100.

Petitioners are informed TDOT has already acquired right-of-way and begun construction on the remaining segments of the Project proposed to run through the Southwest Community.

(Numbering in petition omitted).

The petition, as later amended on two occasions, alleges that the Commissioner has certain "non-discretionary" duties that he must perform in connection with Route 840. The amended petition goes on to allege that "even if [the aforesaid duties] are discretionary," the Commissioner

and TDOT "may not perform or fail to perform those duties in an arbitrary and oppressive manner, nor may they abuse their discretion in deciding whether or not to perform such duties."

The petition identifies the "non-discretionary" duties of the Commissioner as those set forth in (1) T.C.A. § 54-1-105[1]; (2) "the Procedure Manual for Highway Location Studies"; (3) TDOT's "Right-of-Way Manual"; and (4) T.C.A. § 4-33-104[2] pertaining to an "economic impact statement." The amended petition goes on to allege that the Commissioner has failed to perform his duties and meet his responsibilities and, as a result, the petitioners "are adversely affected and their rights are impaired and interfered with by the [Commissioner's] and TDOT's failure and refusal to perform

[1]T.C.A. § 54-1-105 (1998) sets forth the duties of the Commissioner, including, as particularly pertinent to the petitioners' claims, the duty to

> establish standards for the construction and maintenance of highways in the counties, giving due regard to topography, natural conditions, availability of road material, prevailing traffic conditions, and ways and means of the counties to meet their portion of the cost of building and maintaining roads under the provisions of this chapter and chapters 2 and 5 of this title.

[2]T.C.A. § 4-33-104 (1998) provides as follows:

> (a) Upon written request by the commissioner or head of any agency, or by any member of the general assembly, each agency shall within a reasonable time justify a proposed action by preparing an economic impact statement using professionally accepted methodology, with quantification of data to the extent practicable, giving effect to both short-term and long-term consequences; provided, that the provisions of this section shall not apply to any action of the department of transportation in which federal-aid matching funds are used.
> (b) The economic impact statement shall include the following information:
> (1) A description of the action proposed, the purpose of the action, the legal authority for the action and the plan for implementing the action;
> (2) A determination that the action is the least-cost method for achieving the stated purpose;
> (3) A comparison of the cost-benefit relation of the action to nonaction;
> (4) A determination that the action represents the most efficient allocation of public and private resources;
> (5) A determination of the effect of the action on competition;
> (6) A determination of the effect of the action on the cost of living in the geographical area in which the action would occur;
> (7) A determination of the effect of the action on employment in the geographical area in which the action would occur;
> (8) The source of revenue to be used for the action; and
> (9) A conclusion as to the economic impact upon all persons substantially affected by the action, including an analysis containing a description as to which persons will bear the costs of the action and which persons will benefit directly and indirectly from the action.
> (c) If, during the course of an agency action, information required by the economic impact statement materially changes, the agency shall amend the statement with the correct information.

their duties as outlined above, inasmuch as Petitioners are not receiving the protections and benefits, including the environmental, safety, and economic benefits they would be afforded, and to which they are entitled, if [the Commissioner] and TDOT were performing their duties with respect to Route 840 as it pertains to Williamson County."

The petition concludes by seeking a writ of mandamus as to the various alleged duties and responsibilities of the Commissioner "with respect to those segments of [Route 840] proposed to run through Williamson County." It also prays

> [t]hat a temporary, preliminary and permanent injunction be issued prohibiting [the Commissioner] and TDOT from undertaking any further design, planning, financing, contract letting, right-of-way acquisition, surveying, excavation, or construction of any part of [Route 840] proposed to run through the Southwest Community [of Williamson County], until such time as the [Commissioner] and TDOT have performed all their non-discretionary duties as set forth in the writ;...

At the conclusion of a bench trial below, the court filed a 110-page memorandum opinion with findings of fact and conclusions of law that it later incorporated into a "Final Judgment, Writ of Mandamus, and Permanent Injunction" that "grant[ed] the [p]etition in its entirety." In its final judgment, the trial court directed the performance of numerous specified duties and responsibilities found by it to be incumbent upon the Commissioner. After enjoining the Commissioner and others from doing various and sundry things with respect to Route 840, the judgment concludes that the Commissioner and TDOT,

> its officers, agents, attorneys, designees, employees, contractors, subcontractors, and any other persons acting in concert or participation with him or under his control, as well as their respective successors, shall be and hereby are enjoined from engaging in any further contract letting, right-of-way acquisition, excavating, constructing, or building of [Route] 840 in the Southwest Community [of Williamson County] until [the Commissioner] complies with the requirements of this Order.

This appeal followed.

## II.

The Commissioner makes a number of assertions on appeal:

> 1. The Williamson County Chancery Court did not have subject matter jurisdiction of the petition filed against the Commissioner.

2. The proof at trial did not establish the necessary factual predicate for the issuance of a writ of mandamus.

3. Because of a previously-filed suit by the petitioners in Davidson County, they are precluded – by virtue of the doctrine of prior suit pending – from raising the issue of whether T.C.A. § 67-3-2003(b)(1) requires the Commissioner to plan, design, finance and construct State Route 840 as an interstate highway.

4. The trial court erred in holding that T.C.A. § 67-3-2003(b)(1) requires the Commissioner to plan, design, finance, and construct State Road 840 as an interstate highway and to comply with all federal environmental statutes and regulations as a result thereof in its construction.

We have determined that the first issue is dispositive of this appeal. Since this issue – subject matter jurisdiction – is a question of law, our review is *de novo* with no presumption of correctness as to the trial court's conclusion as to this matter. ***Nelson v. Wal-Mart Stores, Inc.***, 8 S.W.3d 625, 628 (Tenn. 1999).

In view of our determination that the trial court lacked subject matter jurisdiction to hear this petition against the Commissioner, we pretermit consideration of the other issues.

III.

In assuming jurisdiction of this controversy in the face of the Commissioner's argument that he could not be sued on the cause of action alleged in the petition except in an appropriate court in Davidson County, the Williamson County Chancery Court found that this was a controversy about land:

> Clearly the land and waters in the wake of proposed 840 in Williamson County are the subject of the controversy because but for the land and waters, the Commissioner's alleged refusal either to "establish" proper "construction and maintenance" standards or to follow such standards under T.C.A. 54-1-105(b)'s mandate would be of no consequence or impact to the Petitioners.

> *   *   *

> Venue is proper in this Court under two alternative Tennessee statutes – T.C.A. 29-25-103 and T.C.A. 20-4-107.

*   *   *

Though the Petitioners are seeking a writ of mandamus requiring Commissioner Saltsman to perform certain duties, those duties have a direct relationship to and impact on the land owned by the Petitioners.  In the case of the Association and the Heritage Foundation, a direct impact on land that the Association and the Heritage Foundation have an interest in protecting based upon their stated purposes.

The construction of 840 will have a direct impact on specific property in which Petitioners have a specific interest.  As a result, there is specific property to which this action relates, and T.C.A. 29-25-103 applies to the determination of proper venue for this action.

T.C.A. 29-25-103 is one of the statutory exceptions to the general rule that a commissioner or head of a department of state government may only be sued in Davidson County.  T.C.A. 29-25-103 sets forth the proper venue for which a writ of mandamus is returnable and is controlling on this issue.

Williamson County is the proper venue for this action since the subject of the controversy is land located in Williamson County.

Moreover, T.C.A. 20-4-107 sets forth the proper venue for cases involving real property in which the State of Tennessee, or any state agency, is a party, as follows:

> Notwithstanding any other provision of law or rule of procedure to the contrary, any action the subject matter of which involves real property in which the state of Tennessee, or any agency thereof, is a party, may be properly instituted in any county in which such property is located.

The present action does in fact relate to specific property, i.e., the property on which Petitioners live and recreate and which will be taken and adversely impacted by the Commissioner of Transportation's failure to establish and follow proper standards under T.C.A. 54-1-105(b).  The nonperformance of these duties prior to or during the construction of 840 have [sic] a direct relationship to an[d] impact on specific property in which the Petitioners have a specific interest.  Petitioners want TDOT to consider the economic,

-7-

environmental, historical, and social impacts on the water, land, homes and communities which 840 will affect and on which Petitioners[] live. As a result, T.C.A. 20-4-107 is another basis for this Court to find that Williamson County is the proper venue for this action.

(Numbering in memorandum opinion omitted).

IV.

In arguing that he cannot be sued in Williamson County, the Commissioner points to T.C.A. § 4-4-104(a) (1998), which provides as follows:

Each department shall maintain a central office at the capitol, which shall be the official residence of each commissioner, or head of department.

He contends that the cases have construed this provision to mean that a commissioner of a department of state government, in his or her official capacity, can only be sued in Davidson County, *i.e.*, his official residence. Hence, so the argument goes, the Williamson County Chancery Court did not have subject matter jurisdiction over the instant suit, which is admittedly a suit against Commissioner Saltsman in his official capacity.

The petitioners contend that other statutes vest the Williamson County Chancery Court with subject matter jurisdiction over the issues raised in the subject controversy. They rely upon T.C.A. § 29-25-101 (2000) ("Circuit judges and chancellors have power to issue writs of mandamus upon petition or bill, supported by affidavit."); T.C.A. § 29-25-103 (2000) ("The writ is returnable to the court of the county in which the land lies, in all cases where land is the subject of controversy, and in all other cases to the court of the county where the defendant resides, or, if against a public officer or corporation, in the county in which the office is kept or corporation does business."); and T.C.A. § 20-4-107 ("Notwithstanding any other provision of law or rule of procedure to the contrary, any action the subject matter of which involves real property in which the state of Tennessee, or any agency thereof, is a party, may be properly instituted in any county in which such property is located.") Finally, the petitioners contend that T.C.A. § 4-4-104(a) (1998), the statute upon which the Commissioner relies to support his lack of jurisdiction argument, addresses the concept of venue, and not that of subject matter jurisdiction. They argue that the Commissioner failed to raise the issue of lack of venue on appeal and, as a consequence of that failure, cannot now rely upon it.

V.

A.

We first examine the petitioners' asserted bases to justify the placing of this lawsuit in the Williamson County Chancery Court.

B.

The petitioners contend that this suit is about real property; that the real property is located in Williamson County; and that T.C.A. § 20-4-107 – with its reference to "any action the subject matter of which involves real property" – and T.C.A. § 29-25-103 – with its reference to returning "[t]he writ...to the county in which the land lies, in all cases where land is the subject of the controversy," – vest the Williamson County Chancery Court with subject matter jurisdiction of this case. We believe this argument must fail because, as we construe the allegations of the petition and the relief sought – and granted in its entirety by the trial court – the controversy in this case is not about "real property," *see* T.C.A. § 20-4-107, or "land," *see* T.C.A. § 29-25-103.

T.C.A. § 20-4-107 has been alluded to by the appellate courts of this state on a number of occasions. None of those cases support the petitioners' reliance on that statute to justify the filing of the instant action in the Williamson County Chancery Court.

In *Carter v. Olsen*, 660 S.W.2d 483 (Tenn. 1983), the Supreme Court reviewed a case involving the collection of inheritance taxes on a tract of land located in Franklin County, belonging to a deceased resident of Texas. *Id*. at 483. When the Commissioner of Revenue sent a final demand for payment ordering the plaintiffs to pay the tax assessment or suffer seizure of the property, the plaintiffs filed a complaint in the Franklin County Chancery Court against the commissioner. *Id*. at 484. The complaint alleged, among other things, that the commissioner assured the plaintiffs that the Department of Revenue would not pursue collection during the administrative appeal process. *Id*. The trial court found "that allowing the commissioner to collect the taxes, which could only be done by selling a large portion of the property, before any of the legal questions had been resolved would result in irreparable harm to the Plaintiffs." *Id*. At trial, in the face of the commissioner's argument that the Franklin County Chancery Court lacked jurisdiction, the trial court relied upon T.C.A. § 20-4-107 as statutory authority for its jurisdiction. *Id*. On appeal, the Supreme Court held that the commissioner "was without authority…to levy against the Plaintiff's property until Plaintiff exhausted his administrative remedy as required by law to do." *Id*. at 486. Except for the portion of the opinion relating the history of the case in which the Supreme Court noted the trial court's claimed basis of jurisdiction, the Supreme Court did not address the question of subject matter jurisdiction and did not take a position on that matter.

In *Barry v. Commissioners of Commerce & Insurance, et al.*, C/A No. 01A01-9404-CH-00156, 1994 WL 485588, (Tenn. Ct. App. W.S., filed September 9, 1994), the plaintiff was constructing, without the benefit of a licensed architect or engineer, a three-story addition to a

building he owned in Wilson County. *Id*. at *1. Upon receiving an order to cease the unlicensed practice of architecture and engineering, the plaintiff brought suit in the Wilson County Chancery Court against the Commissioner of Commerce & Insurance and the State Board of Architectural and Engineering Examiners, seeking a declaratory judgment and injunctive relief. *Id*. The trial court dismissed the complaint for lack of venue. *Id*. The issue on appeal was "whether venue is proper in Wilson County pursuant to T.C.A. § 20-4-107 as asserted by plaintiff, or whether venue is proper in Davidson County because plaintiff's lawsuit is against a state officer in his official capacity." *Id*. We found that the case did not involve real property within the meaning of T.C.A. § 20-4-107 and that "the gravamen of [the plaintiff's] complaint is his right to practice unlicensed architecture or engineering." *Id*. at *2, *1. We relied upon T.C.A. § 4-4-104(a) and upon the "well settled [rule] that a lawsuit brought against a state officer in his or her official capacity must be brought in the county of the officer's official residence," in affirming the trial court's dismissal predicated on that court's finding that the case had to be brought in Davidson County. *Id*. at *2.

In ***Bowden Building Corporation v. Tennessee Real Estate Commission***, 15 S.W.3d 434, 447-48 (Tenn. Ct. App. 1999), *perm. app. denied* February 14, 2000, the plaintiff was a corporation "engaged in the business of acquiring and selling real estate for its own account in Shelby County, Tennessee, through...corporate representatives, some of which [were] not licensed real estate brokers." *Id*. at 436 (internal quotation marks omitted). Subsequent to receiving an order to cease and desist, the plaintiff brought suit in the Shelby County Chancery Court against the Tennessee Real Estate Commission, its members, and the Attorney General. *Id*. at 436-37. The complaint pertained "to the construction, enforcement, and constitutionality of particular provisions of the Tennessee Real Estate Broker License Act of 1973," and sought, among other things, declaratory relief. *Id*. at 436. The defendants moved to dismiss the complaint on the ground that the plaintiff failed to seek relief in the Davidson County Chancery Court in accordance with the Uniform Administrative Procedures Act ("UAPA"). *Id*. at 437. The trial court relied upon T.C.A. § 20-4-107 in denying the motion. *Id*. at 438. Upon appeal, we found that the gravamen of the complaint did not involve real property but rather the right of the plaintiff's employees to engage in unlicensed real estate brokering. *Id*. at 448. We accordingly found that Davidson County was the proper site of the litigation under T.C.A. § 4-5-225 of the UAPA. *Id*.

In the instant case, it is clear beyond any doubt that the petition, as amended, seeks an order from the trial court directing the Commissioner to perform the duties alleged to be incumbent upon him as they pertain to the planning for, and the construction of, Route 840 through southwest Williamson County. The trial court recognized the thrust of the petition – a petition that it granted "in its entirety." It agreed with the petitioners that the Commissioner had certain legal duties pertaining to Route 840 in Williamson County and that he was not meeting his responsibilities with respect to those duties. The trial court remedied this perceived breach of duty by ordering the Commissioner to properly perform his duties and, to the extent his duties are discretionary in nature, to perform them without abusing his discretion. The court then halted all work on Route 840 in Williamson County until the Commissioner had done that which he was ordered to do.

This is not a suit about real property. It is a suit seeking to require a commissioner of a department of the State of Tennessee to do his job. Therefore, the Williamson County Chancery Court cannot rely upon T.C.A. § 20-4-107 or T.C.A. § 29-25-103 to sustain its jurisdiction in this case. Those statutes simply do not apply to the cause of action attempted to be asserted in the petition.

It goes without saying that if and when Route 840 is extended through southwest Williamson County, it will impact property in that county. Some property in the county probably will be purchased while other tracts will have to be condemned. Other property, not acquired to accommodate Route 840's right-of-way, probably will also be affected, albeit in varying degrees. None of this means, however, that this lawsuit – this controversy – is an action "the subject matter of which involves real property." T.C.A. § 20-4-107. The relief granted in this case – which is a hundred percent of that sought in the petition – would not, upon execution, *directly* impact the ownership or enjoyment of a single, identified piece of property. As previously noted, the subject matter of this lawsuit focuses on the Commissioner's duties with respect to Route 840 through southwest Williamson County, nothing more and nothing less. If and when the Commissioner decides to condemn property in this part of Williamson County in order to build Route 840, the condemnation lawsuits required to achieve this objective will be suits "the subject matter of which involves real property." Those suits will have to be filed in an appropriate court in Williamson County.

C.

As an alternative basis of power, the petitioners rely upon T.C.A. § 29-25-101 (2000), which grants to "chancellors" the "power to issue writs of mandamus." While there can be no question that a chancellor has the power, *in a case properly before that chancellor*, to issue a writ of mandamus when the requesting party makes out a case for such relief, that statute, by itself, does not grant subject matter jurisdiction in the instant case. T.C.A. § 29-25-101 identifies a type of remedy that a chancellor is empowered to grant; it does not identify a type of controversy that he or she is empowered to hear.

Even if we were to construe T.C.A. § 29-25-101 as a grant of subject matter jurisdiction, it is a general statute that must give way to a specific statute – such as T.C.A. § 4-4-104, the statute upon which the Commissioner relies. As we will see, that statute has been construed to require suits against commissioners of departments of state government to be filed in Davidson County. "A specific statute prevails over a general one." *Morris v. Snodgrass*, 871 S.W.2d 484, 487 (Tenn. Ct. App. 1993).

VI.

The Tennessee Constitution mandates that the State can only be sued as the General Assembly directs by law. Art. I, Section 17, Tennessee Constitution. We believe that the General

Assembly has clearly prescribed that a suit against a commissioner in his or her official capacity, *i.e.*, a suit against the State, must be brought in Davidson County.

As we have seen, T.C.A. § 4-4-104(a) provides as follows:

> Each department shall maintain a central office at the capitol, which shall be the official residence of each commissioner, or head of department.

This statute "locates each department, and fixes the commissioner's official residence, at the capitol in Nashville, Davidson County." *Delta Loan & Finance Co. v. Long*, 206 Tenn. 709, 713, 336 S.W.2d 5, 6 (1960) (construing T.C.A. § 4-404, the precursor of T.C.A. § 4-4-104). "The *situs* of such department and official residence is, therefore, local like that of a municipal corporation." *Id*. (emphasis added). The Commissioner is the head of TDOT pursuant to T.C.A. § 4-3-2302(a) (1998).

Cases interpreting T.C.A. § 4-4-104 or its substantially similar predecessor have found that the general rule "is that a commissioner or head of a department of state government may be sued as such only in the county of his official residence…." *Delta Loan*, 206 Tenn. at 713, 336 S.W.2d at 6.[3] *See also Morris*, 871 S.W.2d at 485 ("T.C.A. § 4-4-104, as interpreted by the courts of this state for many years, establishes venue for suits against state officials such as these defendants in Davidson County."); *Barry*, 1994 WL 485588 at *2 (Tenn. Ct. App. 1994) ("It is well settled that a lawsuit brought against a state officer in his or her official capacity must be brought in the county of the officer's official residence.") (citing *Delta* and *Morris*). *See also* T.C.A. § 29-25-103 (The writ [of mandamus] is returnable..., if against a public officer..., in the county in which the office is kept....).

The effect of T.C.A. § 4-4-104(a) in the instant case is to establish the Commissioner's official residence at the "central office" of TDOT "at the capitol" in Davidson County. The petition acknowledges, as it must, that the Commissioner's "principal office is located at the same address

---

[3]*Delta Loan* relied upon the case of *City of Nashville v. Webb*, 114 Tenn. 432, 85 S.W. 404 (1905), which gives a glimpse into a possible rationale for this rule:

> [A]ctions against municipal corporations are inherently local. These bodies cannot change their situs or their place of abode. They cannot remove from one place to another, and sojourn for a time at this point or that. They remain stationary; hence they must be sued where they are found – that is, in the county of their location….Such actions are not only inherently local, but it is of the greatest importance to the welfare of such bodies, and of the citizens whom they serve, that their officers should be permitted to remain at home and discharge their public duties, instead of being called hither and thither over different parts of the state to attend to litigation brought against the city through the agency of counterpart writs.

*City of Nashville*, 114 Tenn. at 435, 85 S.W. at 405.

as TDOT," which latter address the petition identifies as "Suite 700, James K. Polk Building, Nashville, Tennessee 37243."

The petitioners, recognizing the import of T.C.A. § 4-4-104(a), argue that it pertains to venue, and not subject matter jurisdiction. They then argue that the Commissioner did not expressly raise the issue of venue on appeal and is, therefore, precluded from arguing it now.

We recognize that some of the reported cases have tended to blur the line between the concepts of subject matter jurisdiction and venue. Loose language in some of the cases has contributed to the confusion surrounding the distinction between these concepts. This subject was clarified by the Supreme Court in the 1996 case of *Meighan v. U.S. Sprint Communications*, 924 S.W.2d 632 (Tenn. 1996), wherein the High Court said the following:

> Subject matter jurisdiction and venue are two separate concepts. Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy. It relates to the nature of the cause of action and the relief sought. It is generally defined by the constitution or statute and conferred by the authority that organizes the courts....
>
> Venue, on the other hand, is a concept based on privilege of and convenience to the parties. It is generally not a condition precedent to the court's power, but relates instead to the appropriateness of the location of the action. While there is much debate regarding the connectedness between the two concepts, our rules of civil procedure have clearly distinguished between the two. Improper venue is a matter which is waived unless contested in the first pleading. Subject matter jurisdiction, on the other hand, cannot be waived, because it is the basis for the court's authority to act.

*Id*. at 639 (citations omitted).

In our judgment, the issue before us is the "authority of [the Williamson County Chancery Court] to hear a particular controversy," that is, a suit against the Commissioner to compel him to perform the duties of his office as they pertain to Route 840 in southwest Williamson County. The General Assembly has exercised its constitutional grant of authority to prescribe that such a controversy must be litigated in an appropriate court in Davidson County. This is a question of subject matter jurisdiction, not one of venue.

VII.

In summary, we find and hold that the Williamson County Chancery Court was without subject matter jurisdiction, *i.e.*, without power, to hear the instant case. Because a court cannot

-13-

exercise jurisdiction that has not been expressly, or by necessary implication, conferred upon it, it follows that the judgment of the Williamson County Chancery Court in the instant case is void and of no effect. *See Dishmon v. Shelby State Community College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999), *perm. app. denied* April 10, 2000.

VIII.

The judgment of the trial court is reversed in its entirety and the petition is dismissed. Costs at the trial court level and on appeal are taxed to the petitioners. This case is remanded to the trial court for collection of costs of the trial court, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE