IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 9, 2010

**DARLENE MANIS BROWN v. ALLAN CRAIG VAUGHN**

**Appeal from the Circuit Court for Hamilton County**
**No. 09D2448      L. Marie Williams, Judge**

---

**No. E2010-00373-COA-R3-CV - FILED SEPTEMBER 28, 2010**

---

Darlene Manis Brown, a Tennessee resident, filed a petition in the trial court seeking a protective order against her former boyfriend, Allan Craig Vaughn, a resident of the state of Georgia.  Based upon her petition, the trial court issued an ex parte order of protection.  Later, following an evidentiary hearing, the protective order was extended for one year.  Vaughn appeals.  He challenges the sufficiency of the evidence supporting the order of protection and claims the trial court lacked jurisdiction of this dispute.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Joseph E. Willard, Jr. and Ann Willard Fiddler, Rossville, Georgia, for the appellant, Allan Craig Vaughn.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Darlene Manis Brown.

**OPINION**

I.

The parties were romantically involved from November 2008 to September 2009.  They lived together at Vaughn's home in Georgia during some of this time.  On September 10, 2009, the petitioner and her former husband, Robert "Butch" Brown, who were divorced earlier in the year, were remarried.  Nevertheless, the petitioner and Vaughn continued to see each other.  Near the end of September 2009, their relationship ended and the petitioner

returned home to Tennessee to live with her husband. Some three months later, on December 28, 2009, she filed her petition based upon allegations that (1) Vaughn had abused her, (2) he was stalking her, and (3) she was afraid of him.[1] The trial court issued an ex parte order of protection. A second ex parte order was issued on January 12, 2010.[2] A bench trial on the petition was held on January 25-26, 2010. In its ruling, the court stated:

> [T]he Court finds that clearly there's an inappropriate and disruptive relationship between Mrs. Brown and Mr. Vaughn, participated in by both parties. The Court finds that there are credibility issues with all witnesses who have testified in this case, with the exception of Mr. Vaughn's ex-wife and daughter and [Gail Jenkins,] the rebuttal witness.
>
> The Court finds that there have been efforts by all parties to malign and destroy any lasting reputation of the other, that these efforts have been ongoing and are representative of the lifestyle of these parties, and typical of the conduct they have engaged in with and towards each other throughout the relationships. The Court finds that Mrs. Brown and Mr. Vaughn both have engaged in harassing of each other in Tennessee and in Georgia.
>
> Subject matter jurisdiction is challenged. The Court finds that Mr. Vaughn has committed acts which bring him within the state of Tennessee's jurisdiction. The Court finds there have been communications that are inappropriate, harassing and threatening of Ms. Brown towards Mr. Vaughn, and Mr. Vaughn towards . . . Ms. Brown in both states.
>
> \* \* \*
>
> The Court makes a finding within the Tennessee statutes of physical abuse; Mr. Vaughn towards Ms. Brown, both in Mexico and in Destin. The Court further finds that there was

---

[1] The petitioner's husband also sought an order of protection against Vaughn, however, the trial court denied his petition at the conclusion of the hearing and he did not appeal.

[2] In her brief, the petitioner states that the "first hearing date passed without service upon [Vaughn]," and that Vaughn was later served with the petition and the "second" ex parte order of protection. In this appeal, Vaughn does not challenge the method or manner of service.

conduct of Mr. Vaughn in the state of Tennessee that . . . placed Ms. Brown in continuing fear of physical harm. On that basis, the Court will enter an order of protection in favor of Darlene Brown against Mr. Vaughn.

The order prohibited Vaughn from contacting or communicating with the petitioner by any means, directly or indirectly, or from coming about her residence or place of employment. Further, Vaughn was ordered to get rid of all firearms while the protective order is in effect. Vaughn filed a timely notice of appeal.

II.

Vaughn presents two issues for our review:

1.  Whether the trial court had jurisdiction over this matter.

2.  Whether the allegations in support of the petition were proven by a preponderance of the evidence.

As an additional issue, the petitioner submits that she is entitled to an award of her reasonable attorney's fees and costs in defending this appeal.

III.

Our review of the trial court's findings of fact is *de novo* upon the record of the proceedings below, accompanied by a presumption of correctness, a presumption we must honor unless the preponderance of the evidence is against those findings. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The determination of jurisdiction – subject matter jurisdiction and in personam jurisdiction – is a question of law. ***Southwest Williamson County Cmty. Ass'n v. Saltsman,*** 66 S.W.3d 872, 876 (Tenn.Ct.App.2001); ***Nelson v. Wal-Mart Stores, Inc***., 8 S.W.3d 625, 628 (Tenn. 1999). Our review as to the trial court's conclusions of law is *de novo* with no presumption of correctness. ***Kendrick v. Shoemake***, 90 S.W.3d 566, 569 (Tenn. 2002).

IV.

We begin with the jurisdictional challenge. Although Vaughn imprecisely presents a general attack against the trial court's jurisdiction "of the subject matter and the person,"

his specific claim is that he could not properly be pursued in the trial court based upon conduct that, according to him, occurred entirely outside the state of Tennessee.

Courts may not adjudicate a civil claim without having jurisdiction over both the subject matter and the parties. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy. *Meighan v. U.S. Sprint Communications*, 924 S.W.2d 632, 639 (Tenn. 1996). It "relates to the nature of the cause of action and the relief sought," *see Landers*, 872 S.W.2d at 675, and is generally defined by the constitution or statute and conferred by the authority that organizes the courts. *See Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989); *Turpin v. Conner Bros. Excavating Co., Inc*., 761 S.W.2d 296 (Tenn. 1988). Although Vaughn makes reference to a lack of subject matter jurisdiction, he conceded that the trial court was authorized to hear this action involving an order of protection. *See* Tenn. Code Ann. § 36-3-601(3)(C) (providing that an order of protection may be sought in either a "court of record with jurisdiction over domestic relation matters or the general sessions court of the county in which the petitioner resides."); and Tenn. Code Ann. 16-10-101 (providing that the circuit court is a court of general jurisdiction, "and the judges thereof shall administer right and justice according to law in all cases where the jurisdiction is not conferred upon another tribunal."). We conclude that Vaughn's argument – that an alleged lack of any contact between the parties in Tennessee left the trial court without power over *him* – is properly viewed as a challenge to the trial court's ability to exercise in personam jurisdiction rather than subject matter jurisdiction.

In personam jurisdiction, by contrast to subject matter jurisdiction, relates to the ability to bring the parties before the court. "Jurisdiction of the parties is premised on their being properly subject to service of process, i.e., to being haled into the given court." *Young v. Kittrell*, 833 S.W.2d 505, 507 (Tenn. Ct. App. 1992). Unlike subject matter jurisdiction, in personam jurisdiction may be waived by consent or by failure to object. *Landers*, 872 S.W.2d at 675.

The United States Supreme Court has authoritatively opined that the "existence of personal jurisdiction . . . depends upon the presence of reasonable notice to the defendant that an action has been brought, *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313-314 (1950), and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum. *Milliken v. Meyer*, 311 U.S. 457, 463-464 (1940)." *Kulko v. Superior Court of Cal*., 436 U.S. 84, 91, 98 S.Ct. 1690 (1978). As we have noted, Vaughn makes no allegation that he was not adequately informed of the filing of the petition, issuance of the ex parte order, and the scheduled hearing. Accordingly, we focus on Vaughn's connections with this state and whether they permitted the trial court to properly invoke jurisdiction over him.

-4-

"Personal jurisdiction of non-resident defendants may be obtained by service of process under the Tennessee Long Arm Statute, (Tenn. Code Ann. § 20-2-214 (a)[3]) if, and only if, the non-resident defendant has such minimum contacts with this state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Landers*, 872 S.W.2d at 675 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945); *J.I. Case Corn. v. Williams*, 832 S.W.2d 530, 531 (Tenn. 1992)). Accordingly, to determine whether personal jurisdiction of Vaughn was established, we must consider first, whether our long arm statute authorizes service under its terms in this case, and whether the requirements of due process were satisfied.

---

[3]The statute in part provides:

(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(1) The transaction of any business within the state;

(2) Any tortious act or omission within this state;

(3) The ownership or possession of any interest in property located within this state;

(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

(6) Any basis not inconsistent with the constitution of this state or of the United States;

(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

The long-arm statute provides that in personam jurisdiction may be asserted over a non-resident of this state on "any basis not inconsistent with the constitution of this state or of the United States." *See* Tenn. Code Ann. § 20-2-214(a)(6). "Subsection (6) changed the long-arm statute from a 'single act' statute to a 'minimum contacts' statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process." ***Masada Inv. Corp. v. Allen***, 697 S.W.2d 332, 334 (Tenn. 1985)(citing ***Shelby Mutual Ins. Co. v. Moore***, 645 S.W.2d 242, 245 (Tenn. Ct. App. 1981)). "[T]hree primary factors are to be considered in determining whether the requisite minimum contacts are present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Two lesser factors to be considered are the interest of the forum State and convenience." ***Id***. at 334-35 (citing ***Shelby Mutual***, 645 S.W.2d at 245). In ***Shelby Mutual***, this court concluded:

> The phrase "fair play and substantial justice" must be viewed in terms of whether it is fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action. In each case, the quality and nature of those activities in relation to the fair and orderly administration of the law must be weighed. . . . [T]his must involve some subjective value judgment by the courts.

645 S.W.2d at 246.

In the present case, we conclude that Vaughn's conduct had sufficient minimum contacts with this state to justify invoking jurisdiction over him. In particular, the evidence leads to the reasonable inference that Vaughn repeatedly contacted the petitioner in Tennessee by sending text messages to her and her husband. Significantly, one of these messages contained a picture of the petitioner exiting the shower – a photograph that was identified as one Vaughn had taken of the petitioner in Mexico. The picture was transmitted to both the petitioner and her husband in Tennessee. Vaughn conceded that he had taken the picture, and failed to refute the petitioner's assertion that it could only have been sent by him. Other text messages sent from the same phone number as the one that included the picture were sent to the petitioner and her husband. The messages suggested the petitioner was being watched. In her petition and at trial, the petitioner alleged repeated acts of physical abuse by Vaughn against her, all in other jurisdictions. In addition, she reported that during their relationship, Vaughn, who owned many firearms, had threatened to "blow her brains out." The petitioner said after the last act of violence, she became fearful of Vaughn when she began receiving the messages upon returning home to Tennessee.

At this juncture, we emphasize what this case is *not* about – it is not a case, as Vaughn urges, where "nothing occurred in Tennessee." Vaughn correctly asserts that there was no proof of physical abuse or physical contact in this state. This, however, is not the end of the discussion. We are mindful that the expressly-stated legislative purpose and intent for orders of protection is "to recognize the seriousness of domestic abuse as a crime and to assure that the law provides a victim of domestic abuse with enhanced protection from domestic abuse." Tenn. Code Ann. § 36-3-618. Although the evidence did not show that Vaughn physically came into this state, we conclude that the trial court properly exercised jurisdiction over Vaughn based on numerous messages and a picture he transmitted into this state to a person he had previously abused and threatened outside the state. In our view, such contacts constituted "conduct and connection with the forum State . . . such that [Vaughn] should reasonably anticipate being haled into court there." ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).

We further address the petitioner's alternative argument that Vaughn waived his right to contest in personam jurisdiction by his actions in furtherance of the proceeding in the trial court. More specifically, the petitioner correctly notes that Vaughn appeared with his counsel and witnesses, and stated no objection to jurisdiction at the start of the January 25 hearing. The hearing began with the petitioner's counsel attempting to contact her witness – with the previously granted permission of the court – by telephone. When Vaughn's counsel objected to this procedure, the court offered to leave the ex parte order in place, while affording Vaughn an opportunity for discovery of the witness. After consultation with his client, counsel for Vaughn declined the court's offer of a continuance, stating "We don't not [sic] want to continue. We have five witnesses here, so . . . ."

After the witness could not be reached, the petitioner testified. On cross-examination, Vaughn's counsel questioned the petitioner extensively about acts of physical abuse that the petitioner alleged Vaughn committed against her in various locations, all outside of Tennessee. When the petitioner responded to this line of questioning, the subject of jurisdiction first came up. The following exchange appears in the transcript:

> [Counsel for the petitioner]: Your Honor, my objection at this point is that this Court has jurisdiction because she is a Tennessee resident for acts that occurred in Tennessee; or if she is concerned for her safety, this is the appropriate court to go to. Court has jurisdiction over someone who commits acts that cause her to be concerned about her safety.
>
> The Court: You're correct on the venue statute.

* * *

The Court: It's the jurisdiction.

[Counsel for the petitioner]: I think on redirect I can clarify the acts that have occurred in Tennessee.

* * *

[Counsel for Vaughn]: No. Oh, I'm not worried about venue. She, she got venue. It's jurisdiction that's the issue.

The hearing continued without further argument, or a jurisdiction-based objection or motion by Vaughn. Not until his closing statement did counsel for Vaughn move to dismiss the action. At that time, counsel argued as follows:

> [W]e would respectfully request that this action be dismissed or left hanging for a brief time to allow this matter to transfer to the state of Georgia, or for this lady to file for a temporary protective order in the state of Georgia. We would respectfully submit that the evidence shows in this case that this Court lacks jurisdiction of the subject matter and the person here.
>
> There has not been any proof regarding any physical contact or any physical abuse that occurred in Tennessee. The record would reflect that it all occurred in Georgia, Florida, or Mexico. There's also clearly testimony from Ms. Brown that there's been no contact, verbal or physical, in Tennessee since September [2009]. At the time the ex parte order was entered, or this petition was filed, there had been no contact with any definitive proof in over four months.
>
> We believe that the standard of proof here is that there has to be a preponderance of the evidence showing that something occurred in Tennessee. We don't have this in this case.

This Court has observed that a party makes a general appearance in a case, and thus consents to jurisdiction over his or her person, when he or she takes a position inconsistent with the claim that personal jurisdiction is absent. *See **Dooley v. Dooley***, 980 S.W.2d 369, 371 (Tenn. Ct. App. 1998); ***Grosfelt v. Epling (In re Grosfelt)***, 718 S.W.2d 670, 672 (Tenn.

-8-

Ct. App. 1986). "Furthermore, we have stated that a general appearance, and thus a waiver of the right to contest personal jurisdiction, occurs by 'some act or proceeding recognizing the case as being in court, or from the defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff other than one contesting only the jurisdiction of the court.' " *Woodruff v. Anastasia Int'l, Inc.,* No. E2007-00874-COA-R3-CV, 2007 WL 4439677 at * 3 (Tenn. Ct. App. E.S. filed Dec. 19, 2007)(quoting *Grosfelt*, 718 S.W.2d at 672). As we see it, Vaughn waived any defense based on lack of in personam jurisdiction when he appeared at and participated in the hearing on the merits of the petition, declined an opportunity for a continuance, and failed to assert the trial court's lack of in personam jurisdiction in a timely manner.

In summary, we conclude that the court's exercise of jurisdiction over Vaughn was proper based on conduct that occurred within Tennessee and, in the alternative, based on the waiver of his right to contest in personam jurisdiction.

V.

Vaughn also challenges the sufficiency of the evidence relied upon to extend the order of protection. He essentially contends that there was no proof of recent contact, physical or otherwise, between him and the petitioner to support a finding that she was in need of protection when she filed the petition several months after their relationship ended.

In this state, victims of domestic violence may seek judicial protection pursuant to Tenn. Code Ann. § 36-3-601, et seq. (Supp. 2008). The statute provides that "[a]ny domestic abuse victim, . . . who has been subjected to, threatened with, or placed in fear of, domestic abuse, . . . may seek a relief under this part by filing a sworn petition alleging domestic abuse, . . ., by the respondent." Tenn. Code Ann. § 36-3-602(a). Under the statute, "abuse" includes "placing an adult . . . in fear of physical harm, physical restraint. . . ." Tenn. Code Ann. § 36-3-601(1). Persons falling within the category of "domestic abuse victim" include "[a]dults . . . who live together or who have lived together," and "[a]dults . . . who have dated or who have or had a sexual relationship." Tenn. Code Ann. § 36-3-601(5)(B), (C). "Domestic abuse" means committing abuse against a victim, as victim is defined above, within subdivision (5) of Section 36-3-601. Tenn. Code Ann. § 36-3-601(4).

A petitioner seeking an order of protection must establish domestic abuse by a preponderance of the evidence. Tenn. Code Ann. § 36-3-605(b); *Collins v. Pharris*, No. M1999-00588-COA-R3-CV, 2001 WL 219652, at *5 (Tenn. Ct. App. M.S. filed March 7, 2001). In extending the protective order in this case, the trial court made a finding of domestic abuse "in that [Vaughn] committed the acts alleged in the Petition" against the

petitioner. Specifically, the petitioner alleged that Vaughn had physically abused her and was stalking her by sending her text messages and pictures, thereby placing her in fear.

At trial, the petitioner presented testimony through herself, her husband, and her rebuttal witness, Gail Jenkins, that her relatively brief relationship with Vaughn was marked by several incidents of physical abuse and ended after the last such incident in Florida. The court heard testimony from the petitioner that her delay in seeking an order of protection was due to the fact that she did not "see any need for it at the time;" she believed Vaughn would "leave [her] alone" after they stopped seeing each other. She explained, however, that from September through December 28, 2009, when she filed the petition, she received "numerous" text messages, some of which indicated that she was being watched at her home. While the petitioner was unable to confirm the sender's identity, she testified to a conversation with Vaughn in which he had loaned her a disposable cell phone and told her "you can send text messages from those throwaway telephones and they can't be traced." Vaughn acknowledged that he had used disposable phones in the past. In addition, the petitioner said that Vaughn had showed her messages he had sent to a former girlfriend that did not identify him as the sender.

Similarly, the petitioner's husband testified that he received various text messages from an "unidentified sender" that he and the petitioner believed to be from Vaughn based on their content. One message Mr. Brown received included a picture of his wife coming out of a shower. In addition, both the petitioner and her husband testified as to vehicles parking on the street behind their home that would immediately leave when Mr. Brown moved to approach them. In addition, the petitioner said that she had discarded a card she had received from Vaughn and returned home one day to find it lying in her driveway. Mr. Brown added that after his wife returned from the trip to Destin with Vaughn, undisputedly the last time the parties were in physical contact, she had bruises and a knot on her arm and was in a "lot of pain." He testified that since then, his wife had been "an emotional wreck" – she stayed in the house most of the time and was afraid to go out unless he or her adult son accompanied her.

The trial court also heard from Vaughn. Vaughn denied that he or anyone at his direction had made any contact with the petitioner since the Destin trip. Vaughn stated he had received "thousands" of text messages from the petitioner, but had sent none. He admitted taking a picture of the petitioner stepping out of the shower during a trip they took to Mexico. He and his witnesses offered testimony to the effect that Vaughn was not at all "computer-savvy." At the same time, Vaughn stated that he had done internet research and learned about websites such as "SpoofCard.com" that allows a person to "send text messages and make them appear to come from different phones."

As set out earlier in this opinion, the trial court found that both parties had credibility issues. Nevertheless, the trial court credited the petitioner's testimony regarding physical abuse by Vaughn outside of Tennessee and harassing communications within Tennessee. In extending the protective order, the court expressly relied on the latter conduct in finding that Vaughn had "placed Ms. Brown in continuing fear of physical harm." This court accords great weight to findings that are based on a trial court's determination of the witnesses' credibility because it is the trial court who observed the witnesses and had an opportunity to assess their credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Wadhwani v. White*, No. M2005-02655-COA-R3-CV, 2007 WL 27329 at * 2 (Tenn. Ct. App. M.S., filed January 3, 2007)(citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)). Upon our examination of the record, that is not the case here.

As the party seeking an extension of an existing order of protection, the petitioner had only to establish the allegation of "domestic abuse, stalking or sexual assault by a preponderance of the evidence." *See* Tenn. Code Ann. § 36-3-605(b). In this case, the petitioner alleged that Vaughn had physically abused her, was stalking her and she was "very scared of him." The evidence does not preponderate against the trial court's findings to support the order of protection.

VI.

Lastly, the petitioner seeks an award of her reasonable attorney's fees and costs incurred in defending this appeal. Tenn. Code Ann. § 36-3-617(a) provides as follows:

> (a) Notwithstanding any other law to the contrary, no victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, after the hearing, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent.

Consistent with the provisions of the statute and in view of our affirmance of the trial court's judgment that extended the order of protection in the petitioner's favor, we conclude that an award of her reasonable attorney's fees and costs on appeal is appropriate.

-11-

## VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court, pursuant to applicable law, for a hearing on the issue of the petitioner's reasonable attorney's fees and costs on appeal and for the enforcement of the trial court's order and collection of costs assessed in the trial court. Costs on appeal are taxed against the appellant, Allan Craig Vaughn.

_____
CHARLES D. SUSANO, JR., JUDGE