IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2009 Session

**STATE OF TENNESSEE EX REL. THE COMMISSIONER OF THE
DEPARTMENT OF TRANSPORTATION
v.
WILLIAM H. THOMAS, JR.**

**An Appeal from the Chancery Court for Shelby County
No. CH-07-0454-1      Walter L. Evans, Chancellor**

_____

**No. W2008-00853-COA-R3-CV - Filed April 27, 2010**

_____

This appeal involves subject matter jurisdiction with respect to billboard permits. The defendant's application for a State permit to erect a billboard in Shelby County was denied, so he filed an administrative appeal from this decision. Meanwhile, the defendant proceeded to erect the billboard in Shelby County without a State permit. The State filed this petition in Shelby County to enjoin the defendant from erecting the billboard pending resolution of the administrative appeal. The defendant argued that the State was not entitled to injunctive relief because he had unfairly been denied a State permit. The defendant also filed a counterclaim based on alleged improper conduct by State officials, seeking to enjoin the State from improperly enforcing its regulations against him in all cases in which he had been denied a State billboard permit. The trial court entered an order enjoining the State from improper enforcement of the billboard regulations. Later, after lengthy evidentiary hearings, the trial court ordered the State to grant the defendant State permits for various billboard sites and assumed continuing jurisdiction over certain administrative proceedings in which the defendant had appealed the denial of billboard permits. The State now appeals. We find that, by statute, the trial court in Davidson County has exclusive subject matter jurisdiction over the matters asserted by the defendant in response to the petition for injunctive relief and in his counterclaims. Therefore, we reverse the decision of the trial court based on lack of subject matter jurisdiction, dismiss the counterclaim in its entirety, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed, Counterclaim is Dismissed, and Case is Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert E. Cooper, Jr., Attorney General; Michael E. Moore, Solicitor General; and George G. Boyte, Jr., Jackson, Tennessee, for the appellant, State of Tennessee

William L. Hendricks, Jr., and Clayton C. Chandler, Memphis, Tennessee, for the appellee, William H. Thomas, Jr.[1]

## OPINION

### FACTS AND PROCEEDINGS BELOW

### Background

By statute, the Plaintiff/Appellant Tennessee Department of Transportation ("TDOT"), by and through its Beautification Division, is charged with the responsibility for overseeing Tennessee's requirements and regulations for erecting and maintaining outdoor advertising, commonly referred to as billboards.[2]  The Billboard Regulation and Control Act of 1972, codified at Tennessee Code Annotated § 54-21-101, *et seq.* ("the Act"), governs the construction, operation, and maintenance of billboards adjacent to interstate or primary highway systems in Tennessee.[3]  TDOT enforces the Act through the Rules of the Tennessee

---

[1]Defendant/Appellee William H. Thomas, Jr., appeared *pro se* for oral argument of this appeal.  At the trial level, Thomas was represented by C. Barry Ward.

[2]"Outdoor advertising" is defined as:

> (12) "Outdoor advertising" means any outdoor sign, display, device, bulletin, figure, painting, drawing, message, placard, poster, billboard or other thing that is used to advertise or inform, any part of the advertising or informative contents of which is located within an adjacent area and is visible from any place on the main traveled way of the state, interstate, or primary highway systems.

T.C.A. § 54-21-102(12) (2008).

[3]"Adjacent area" is defined as:

(continued...)

Department of Transportation ("TDOT Rules"), Chapter 1680-02-03, and in accordance with the applicable federal regulations, 23 C.F.R. § 750, Subpart G, Outdoor Advertising Control.

Under the Act, no person may construct, erect, or operate a billboard adjacent to an interstate or primary highway without a State permit. T.C.A. § 54-21-104(a) (Supp. 2009). To qualify for a State billboard permit, an applicant must satisfy the TDOT and federal regulations in four general categories: zoning of the site, spacing from the nearest existing billboard, size of the structure, and the lighting of the structure. *See* TDOT Rules, Chapter 1680-02-03-.03.

Permit applications are made to the TDOT Commission or through the Beautification Division. *Id.* at 1680-02-03-.03(1)(a)(6). An applicant who is denied a permit may request an administrative hearing. *Id.* at 1680-02-03-.03(1)(a)(10). The administrative proceedings are conducted pursuant to the Uniform Administrative Procedures Act (UAPA), Tennessee Code Annotated § 4-5-101, *et seq.*, and the rules of the Administrative Division of the Tennessee Department of State. *Id.*

## Billboard Construction Without Permits

Defendant/Appellee William H. Thomas, Jr. ("Thomas"), became significantly involved in the outdoor advertising/billboard business in 2004. In 2006, Thomas owned as many as thirty legally permitted billboards subject to the Act.

Thomas applied for State permits on at least four other billboard sites in Shelby County, Tennessee, but these applications were denied. These sites are referred to as Southern Millworks (1 permit), Kate Bond P.D. (2 structures, 4 permits), Perkins Road[4] (2 permits), and Crossroads Ford (1 permit). As to each site, Thomas was denied a State billboard permit based on either the proximity of the site to an existing billboard or zoning issues.

On each of those four sites, despite having been denied a State permit, Thomas proceeded with construction of the billboard structures. On the Southern Millwork site, Thomas requested an administrative hearing to challenge the denial of the permit. The administrative

---

[3](...continued)
> (1) "Adjacent area" means that area within six hundred sixty feet (660') of the nearest edge of the right-of-way of interstate and primary highways and visible from the main traveled way of the interstate or primary highways.

T.C.A. § 54-21-102(1) (2008). The statute defines a number of the terms in this definition, including "interstate" system, "primary system," and "main traveled way." *See* T.C.A. § 54-21-102(9), (10), (12), and (14).

[4]The Perkins Road site is along Interstate 240, near Perkins Road.

proceedings culminated into an order requiring Thomas to remove the Southern Millworks billboard, because he had no State permit for it.[5] This was not done. On the Kate Bond P.D. site, TDOT obtained an order from an administrative law judge to the effect that Thomas could not erect a billboard in the absence of a valid permit, and requiring him to remove the billboard from the site. Thomas appealed the ALJ's ruling to the Davidson County Chancery Court, and did not remove the billboard. On the Perkins Road site, Thomas met with local officials but the permit was not issued, and TDOT issued Thomas a notice of violation.[6]

Finally, on the Crossroads Ford site,[7] Thomas's permit application number 5848 was denied because it was less than 1,000 feet from an existing permitted billboard owned by Thomas's competitor, Clear Channel Outdoor, which was not permitted under TDOT regulations. *See* TDOT Rules, Chapter 1680-02-03-.03(1)(a)(4). Thomas requested a contested case hearing for a declaratory order under the UAPA, arguing that his proposed billboard site qualified for an exception to the proximity rule and that his permit application should therefore be granted. On November 27, 2006, after a hearing, an administrative law judge ruled that Thomas was not entitled to the billboard permit. Thomas appealed that ruling to the Commissioner of TDOT ("Commissioner").

In early 2007, while his appeal on the Crossroads Ford site was pending, Thomas began construction of a billboard structure at the site, despite the fact that his permit application had been denied. To erect the billboard structure at the Crossroads Ford site, Thomas's contractor excavated a roadway over a box culvert on the State-owned right-of-way at the Interstate 40/Interstate 240 interchange, without permission to do so.[8]

---

[5]Thomas had secured a local permit from Shelby County for the Southern Millwork site.

[6]As to another site at 5470 Boswell Street in Shelby County, another Part of the Shelby County Chancery Court issued an injunction requiring Thomas to remove a billboard sign. Thomas, a licensed attorney, was publicly censured by the Tennessee Board of Professional Responsibility for failing to comply with the order of the Chancery Court.

[7]This site, owned by Thomas, was subject to a drainage easement in favor of the State.

[8]The Crossroads Ford site is in an area that is subject to the State's permanent drainage easement for the protection of a local creek. To excavate the road to construct the billboard structure, Thomas's contractor filled over part of the State's drainage area.

## Trial Court Proceedings

### *State Petition*

In light of Thomas's history of constructing billboards without a permit, TDOT decided to seek injunctive relief against him in Shelby County with respect to the Crossroads Ford site. Thus, on March 2, 2007, the State of Tennessee ("State"), on behalf of TDOT, filed a Petition for Restraining Order, Temporary Injunction, Declaratory Judgment, and Permanent Injunction against Thomas in the Shelby County Chancery Court below. Given the fact that Thomas did not have a permit for the billboard, the State alleged, completion and use of the billboard structure for outdoor advertising would violate the Billboard Regulation and Control Act, specifically Tennessee Code Annotated § 54-21-104. Under the Act, the structure would be deemed a public nuisance, pursuant to Section 54-21-105, and any profits Thomas gained from its use would be unjust profits from a public nuisance. The State asked the trial court to issue an order prohibiting Thomas from completing the Crossroad Ford billboard structure, and further asked the trial court to declare the billboard structure a public nuisance under the Act and to require Thomas to dispose of whatever had been constructed at his own expense. If Thomas used the structure for outdoor advertising, the State asked that his revenues be held in a constructive trust. The trial court issued a temporary restraining order and set a show cause hearing March 19, 2007.

On March 16, 2007, Thomas filed his answer. In the answer, Thomas admitted ongoing construction of a billboard structure at the Crossroads Ford site, admitted that his application for a State permit had been denied, and admitted that he did not have a TDOT permit to erect a billboard at that location. Nevertheless, Thomas denied that the State was entitled to the relief requested, because the denial of his permit application on the Crossroads Ford site "is currently the subject of an administrative appeal."[9] Thomas averred that TDOT's denial of his permit application was based on selective and vindictive enforcement of the applicable billboard regulations. Asserting that the State had "unclean hands," Thomas claimed TDOT had engaged in a series of actions intended to discriminate against him, to harm him, to harm his property ownership, and to provide assistance to his competitors. Thomas averred that TDOT systematically denied him a due process hearing after denying his permit application.

### *Counterclaim*

In addition to an answer, Thomas filed a counterclaim which contained similar allegations. In the counterclaim, Thomas asserted that TDOT had adopted a policy of selective enforcement and hostile and discriminatory action against Thomas favoring his business

---

[9]In a somewhat puzzling defense, Thomas also asserted that the State was not entitled to injunctive relief because he had not yet completed the billboard structure.

competitors. As evidence of TDOT's animosity, Thomas submitted emails written by TDOT officials with comments he said were hostile toward him. He cited instances in which his competitors were allegedly treated more favorably, and claimed that he was "singled out" for adverse regulatory action by TDOT.

In his counterclaim, Thomas also alleged that, on numerous occasions after the denial of his application for a billboard permit, TDOT refused his request for an administrative hearing. TDOT's failure to grant the requested hearings, Thomas claimed, violated his right to due process and equal protection, and further evidenced TDOT's animus toward him. As relief, Thomas sought an order enjoining TDOT employees from taking selective and discriminatory actions against him regarding the Crossroads Ford billboard permit application, and asked that TDOT be affirmatively required to issue him a billboard permit for that site.

Shortly thereafter, TDOT and Thomas agreed to the dissolution of the TRO issued by the trial court when TDOT filed its petition. The parties agreed to cooperate in discovery and to agree on a date for a hearing on the injunctive relief requested.

The record shows that Thomas sought considerable discovery. He noticed several depositions, some of TDOT officials and officials of the Memphis and Shelby County Offices of Planning and Development and Construction Code Enforcement. He issued subpoenas duces tecum seeking numerous documents from non-parties to the litigation, including competitor billboard companies and even a law firm representing a competitor.[10] Thomas served on TDOT multiple requests for admissions; he also issued broad requests for TDOT documents pertaining to numerous competitors and their law firm, billboard applications and administrative proceedings, and discussions among TDOT employees for a period of time spanning several years. Numerous interrogatories, similarly broad, were also served on TDOT.

The trial court scheduled a hearing for May 17, 2007. On the date of the hearing, Thomas filed an application for a temporary restraining order. Thomas sought a TRO to enjoin TDOT from (1) interfering with Thomas or disparaging him to business associates, (2) providing nonpublic information about Thomas's business to competitors or assisting those competitors in ways that would obstruct Thomas's business, and (3) issuing a billboard permit to a particular competitor in a named location. He cited emails and other evidence regarding the dealings of TDOT officials with Thomas's competitors and his business associates, which allegedly disparaged Thomas and indicated preferential treatment to

---

[10]Not surprisingly, Thomas's competitors and the law firm sought to quash the subpoenas and asked the trial court for a protective order. The request for a protective order was apparently not granted.

-6-

competitors. Thomas again asserted that TDOT, in several unrelated matters, had improperly denied his request for contested case hearings.

At the hearing, the State argued that the trial court did not have subject matter jurisdiction over Thomas's counterclaims. The State took the position that Thomas's claims against TDOT could be asserted only in Davidson County, Tennessee. Thomas argued that the Shelby County trial court could issue injunctive relief against TDOT, and that venue was proper in Shelby County pursuant to Tennessee Code Annotated § 20-4-107, applicable to matters involving real property. Thomas presented documents obtained in discovery and argued that he was entitled to injunctive relief against TDOT.

The next day, on May 18, 2007, the State filed a motion to dismiss Thomas's counterclaim pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure for lack of subject matter jurisdiction, lack of jurisdiction over TDOT, improper venue, and failure to state a claim upon which relief could be granted. The State also asserted in its motion that Thomas's counterclaim was barred under the doctrine of sovereign immunity.

On May 22, 2007, the trial court entered an order on the matters heard in the May 17 hearing. At the outset, the trial court rejected the State's assertion that the trial court lacked subject matter jurisdiction, because Thomas sought injunctive relief against the State and not State funds or property, and because Thomas asserted selective enforcement as a defense to the State's petition. The trial court further held that venue for Thomas's counterclaim was proper in Shelby County, because "the State instituted this action and sought to obtain an injunction against Mr. Thomas as a result of the use of his property in Shelby County, Tennessee," and because Thomas's counterclaim was based on TDOT's actions with respect to Shelby County property owned by Thomas. Thus, the trial court held that it had subject matter jurisdiction to hear and determine the matters raised by Thomas in his counterclaim.

Having found that it had subject matter jurisdiction and that venue was proper, the trial court went on to address the merits of Thomas's application for injunctive relief against TDOT. The trial court reviewed the emails and other evidence submitted by Thomas in support of his claim of selective and vindictive enforcement of TDOT's billboard regulations. The trial court found that the documents indicated that a TDOT attorney and a TDOT official had given preferential treatment to Thomas's competitor and had had contact with the competitor that appeared to be unethical. The trial court found also that a certain TDOT official had made untrue and disparaging remarks about Thomas to a person with whom Thomas did business. The trial court found all of this to be "substantial evidence of selective and vindictive enforcement against the Defendant Thomas" by TDOT.
Consequently, the trial court granted Thomas virtually all of the relief he requested. It enjoined TDOT from disparaging Thomas to his business associates, from providing

nonpublic information about Thomas's business to his competitors, and from assisting his competitors with "obstructing" Thomas's business. It further enjoined TDOT from:

> . . . engaging in any further selective or vindictive enforcement acts with regard to [Thomas]. [TDOT] is enjoined to act in any way towards Thomas except equitably and equally towards Thomas, [a named competitor] and others who deal with TDOT, and to cease any and all acts which show or appear to be based on favoritism, bias, prejudice, or preference, and that all actions of TDOT shall apply equally to Thomas as they apply to [the named competitor], or any other entity.

The trial court explained that this expansive injunctive relief, prohibiting TDOT from acting any way "except equitably and equally," toward Thomas "and others" was "necessary to prevent any further selective or vindictive enforcement against Thomas by TDOT." This order was to remain in effect pending further orders of the trial court.

The trial court did not expressly address the State's petition for injunctive relief against Thomas.

The State sought permission from the trial court for an immediate interlocutory appeal, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, of the denial of its motion to dismiss Thomas's counterclaim for lack of subject matter jurisdiction. The trial court did not immediately act on the State's request for permission to appeal.

### *Administrative Proceedings on Other Sites*

Developments in Thomas's pending administrative proceedings on his billboard permit applications soon resulted in further escalation of the Shelby County litigation. On June 6, 2007, the TDOT Commissioner issued an order in the pending administrative contested case regarding the Crossroads Ford site. The Commissioner's final order affirmed the order of the ALJ, which held that Thomas did not qualify for any exceptions to the proximity rule and, therefore, was not entitled to a billboard permit for the Crossroads Ford site. On the same date, the TDOT Commissioner issued a final order in another administrative case related to Thomas's permit applications for the Kate Bond P.D. site, applications 5816 and 5817. In that order, the Commissioner also ruled against Thomas, reversing the ALJ's ruling in his favor and remanding the case to the ALJ to reconsider the matter in light of a Court of Appeals decision in another case involving Thomas.[11]

---

[11]This case was *Phillips v. TDOT*, No. M2006-009212-COA-R3-CV, 2007 WL 1237695 (Tenn. Ct. App. Apr. 26, 2007).

-8-

These two adverse administrative rulings drew an immediate response from Thomas. On June 21, 2007, Thomas filed an application in the Shelby County trial court for a second TRO. This application alleged that two named TDOT employees who were hostile to Thomas had impermissibly participated in the TDOT Commissioner's two June 6, 2007 adverse rulings and, in doing so, violated the trial court's May 22, 2007 restraining order. Thomas asserted further that TDOT had failed to commence a UAPA contested case hearing, despite Thomas's November 2006 request regarding the denial of his four permit applications at an unrelated site, Steve Road P.D., and that TDOT's failure to do so constituted a violation of the trial court's May 22, 2007 restraining order. Thomas asked the trial court to issue a second order, enjoining certain TDOT employees from participating in any TDOT matter involving Thomas. Thomas also asked the trial court to stay the final orders issued by the TDOT Commissioner in Thomas's pending administrative proceedings. In addition, Thomas requested that TDOT be ordered to show cause why billboard permits had not been issued to him on his four applications on the Steve Road P.D. site.

On July 6, 2007, Thomas filed a motion for leave of court to file a third-party complaint against Shelby County. The third-party complaint asserted a claim for inverse condemnation, i.e., the unlawful taking of his property. Thomas candidly explained in his motion that he sought to file the third party complaint against Shelby County "for the actions of the State," because the State could not be sued under the doctrine of sovereign immunity. Indeed, the proposed complaint was ostensibly against Shelby County, but essentially complained only of actions by the State. Thomas asserted that, by refusing to allow him to place billboard structures within the TDOT permanent drainage easement on his properties, the State denied Thomas all economically viable use of his properties and interfered with his reasonable expectation to use his properties for outdoor advertising. Thus, Thomas asserted, the State's actions constituted an unlawful taking of his property without just compensation.[12] On July 26, 2007, the trial court entered an order granting Thomas leave to file this third-party complaint. The trial court held that the filing of the complaint against Shelby County was appropriate because, pursuant to Rule 19.01 (joinder of parties if feasible) and Rule 13.08 (joinder of parties to obtain complete relief) of the Tennessee Rules of Civil Procedure, complete relief could not be granted without such joinder. It stated expressly that the issue of subject matter jurisdiction could be addressed later.

Also on July 6, 2007, the trial court held a hearing on Thomas's application for further injunctive relief. On July 16, 2007, the trial court entered an order granting Thomas some of the relief he requested and scheduling a show cause hearing on the remainder. The trial

[12]The State objected to the filing of the third-party complaint, noting that it was asserted against Shelby County "in name only," and that, at any rate, the trial court did not have subject matter jurisdiction over an inverse condemnation lawsuit under Tennessee Code Annotated § 16-11-102(a) (jurisdiction conferred by statute to circuit court).

court stayed the TDOT Commissioner's two June 6, 2007 final orders and ordered TDOT to fully comply with Thomas's discovery requests by July 24, 2007. The trial court scheduled a show cause hearing on August 7, 2007, requiring that the two TDOT officials who were allegedly hostile toward Thomas appear and show cause regarding their involvement in TDOT Commissioner's June 6, 2007 orders, TDOT's response to Thomas's discovery requests, the issuance of a billboard permit to one of Thomas's competitors at a site near the Wolf River, and TDOT's refusal to grant Thomas permission to construct billboards within the State's drainage easement on the Crossroads Ford site. TDOT was further ordered to show cause at the August 7, 2007 hearing on why the four billboard permits for which Thomas applied on the Steve Road P.D. site had not been issued to him.

### *Show Cause Hearing, Stay Order*

On August 7, 2007, at the beginning of the show cause hearing, Thomas announced that he intended to present proof concerning a wide range of grievances against TDOT, dating back to 2005. The State objected to expansion of the scope of the hearing beyond the parameters stated in the July 16, 2007 order setting the show cause hearing. Over this objection, the trial court decided to allow Thomas to present witnesses and other proof "to establish the basis for [his] contention of bias and prejudice, partiality on the part of these TDOT employees. And then we will move from there to determine whether or not the State has shown that it was justified in action which it took."

From there, the show cause hearing grew into a proceeding that spanned some ten days – August 7, 9, 20, 21, 22, September 17, 18, 19, 26, and 27, 2007. The hearing involved approximately a dozen witnesses, either in person or by deposition, and approximately seventy-six exhibits. The witnesses included three TDOT attorneys, four employees of the Beautification Office, a TDOT maintenance supervisor, and the TDOT Commissioner. Thomas testified at the hearing, and also presented the testimony of an engineer. The subject matter of the testimony covered a wide range of topics, including the relationship of a TDOT attorney with a competitor of Thomas an earlier proceeding against Thomas in another Part of the Shelby County Chancery Court, numerous billboard permit applications by Thomas and his competitors in various stages of the administrative process, TDOT's internal communications regarding Thomas and his competitors, and whether Thomas or his competitor qualified for exceptions to the billboard regulations in various locations. In his testimony, Thomas asserted, among other things, that TDOT treated him less favorably than it treated his competitor, and that, when his permit applications were denied, TDOT would not grant his requests for administrative hearings on the denied applications.

Meanwhile, in September 2007, during the course of the testimony in the show cause hearing, Thomas received a notice from TDOT of administrative proceedings in five contested matters related to his permit applications for billboards at the following sites: (1)

Crossroads Ford, (2) Steve Road P.D., (3) Perkins Road, (4) Southern Millwork (pending in Davidson County in Chancery Court), and (5) Wilson – in Fayette County. On October 5, 2007, after the conclusion of the testimony for the show cause hearing but before the trial court had issued an order, Thomas filed a motion asking the trial court to issue a stay in all five TDOT administrative proceedings on Thomas's permit applications. Thomas argued that TDOT had heretofore refused Thomas's requests for administrative proceedings, and its decision at that point to issue notice of hearings was "an act of continuing bad faith of TDOT" and "an attempt to usurp [the trial] court of jurisdiction." He contended that a stay was necessary to prevent conflicts between the administrative decisions and the relief Thomas had requested of the trial court, namely, mandated issuance of the permits to Thomas.

After a hearing on Thomas's motion for a stay, on October 24, 2007, the trial court entered an order granting the motion. As requested, the stay order applied to the proceedings in all five of Thomas's contested cases. The order specifically included the UAPA petition for judicial review involving the Southern Millworks site, pending in the Davidson County Chancery Court, as well as the administrative proceedings on the Wilson site in Fayette County. This order also denied the State's request for permission for an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.

### *Trial Court Final Order*

On February 12, 2008, the trial court entered an order on Thomas's request for relief. The 1l0-page order contained some 188 findings of fact and conclusions of law. At the outset of the order, the trial court outlined its prior rulings and then addressed the issue of jurisdiction. The trial court recognized that the UAPA, specifically Tennessee Code Annotated § 4-5-322, provides that "Judicial Review of an Administrative Body's decision should be instituted in the Chancery Court of Davidson County." It noted, however, that Tennessee Code Annotated § 20-4-107, related to venue, provides that actions involving "real property in which the State of Tennessee or any agency thereof, is a party, may be properly instituted in any county in which such property is located." It also cited caselaw stating that "[a] plaintiff, by filing suit, waives any right to dispute venue. *Corby v. Matthews*, 541 S.W.2d 789 (Tenn. 1976)." In addition, it observed that a request for change of venue that is made for the purpose of delaying the litigation should be denied. Finally, the trial court determined that Thomas's claims were compulsory counterclaims pursuant to Tennessee Rule of Civil Procedure 13.01, because they arose out of the same transaction or occurrence as the State's original petition for injunctive relief, or, in the alternative, were permissive counterclaims.[13] In light of all of these factors, the trial court found that, "as a matter of policy, Mr. Thomas'

---

[13]The trial court noted that both the State's claims and Thomas's counterclaims "involve billboards that Thomas has sought to be erected on certain pieces of property he owns in Shelby County."

-11-

counterclaim should be heard in this [Shelby County] Court to promote judicial economy." Thus, the trial court rejected the State's argument that it did not have subject matter jurisdiction over Thomas's counterclaims.

Satisfied that it had jurisdiction over the subject matter, the trial court went on to address a wide range of issues involving TDOT's compliance with the trial court's discovery orders, several of Thomas's billboard permit applications, and billboard permit applications by Thomas's competitors. As to the discovery orders, the trial court found TDOT in contempt for failing to comply with orders to produce certain documents and respond to Thomas's discovery requests. Regarding the permit applications by both Thomas and his competitors, the trial court considered each application separately; it reviewed in some detail the inner workings of TDOT officials at each stage of the administrative process, with particular focus on TDOT officials who were deemed either biased against Thomas, biased in favor of a competitor, or both. As to each application, findings were made on whether particular actions by TDOT officials were either erroneous or in violation of the trial court's prior order enjoining TDOT from acting "in any way except equitably and equally" toward Thomas and his competitors. Next, in response to Thomas's request that the trial court intervene in other ongoing unresolved administrative proceedings involving TDOT's denial of billboard permits to him, the trial court made the following rulings:

> Steve Road P.D.: Dissolved the stay as to the ongoing administrative proceedings on billboard permit applications 7317, 7318, 7319, and 7320, permitting the administrative process to proceed;
>
> Kate Bond P.D.: Ordered TDOT to issue permits with respect to billboard permit applications 5816, 5817, 5818, and 5819 based on the previous conclusions regarding bias and unfairness in the process;
>
> Crossroads Ford: Remanded the issue of permit applications 5848 and 7546 to the TDOT Commissioner to reconsider the issues "from a neutral perspective without the involvement or influence of any of Thomas' known adversaries within TDOT;" the trial court retained jurisdiction over this matter "to its conclusion;" and
>
> Perkins Road: Dissolved the stay to allow administrative enforcement action to proceed related to permit applications 7068 and 7069, but retaining jurisdiction over the matter.

The trial court declined to exercise jurisdiction over Thomas's permit applications on the Wilson site, because the real property involved was in Fayette County. It also dissolved the

stay of the administrative and judicial proceedings related to the Southern Millwork and Wolf River sites.[14]

The trial court noted that Thomas had requested that it find "every decision of TDOT and its employees towards Thomas [to be] 'illegal, highhanded and egregious.' " The trial court declined to do so, although it found that TDOT "should bear some of the responsibility" for the actions of officials whom the trial court had found unethical or biased. The trial court observed:

> 165. Thomas, . . . with his assertive posture, spread fuel on the fire of TDOT officials, by ignoring, without Court approval, decision of TDOT, and constructing billboards and advertising, without proper state permits.
> 166. In some instances, Thomas may have been justified in taking an aggressive approach with TDOT regarding the denial of some of his permits.

The trial court noted that it could not "substitute its judgment for that of TDOT" as to the issuance of permits, but was limited to the UAPA standard of review of administrative decisions. It found, however, that it had the power to sanction TDOT for civil contempt "to impress upon TDOT the necessity to comply with the Court's orders and to treat Thomas fairly."

On March 19, 2008, the trial court convened a hearing to address the proper drafting of the final order in the case, based on the trial court's findings of fact and conclusions of law. In the resulting order, entered on the same day, the trial court adopted the February 2008 findings of fact and conclusions of law virtually verbatim.[15] The trial court ordered TDOT to issue Thomas the billboard permits related to the Kate Bond P.D. site, remanded Thomas's application on the Crossroads Ford permits to the TDOT Commissioner for reconsideration within the trial court's limits, and ordered that an administrative hearing be promptly set for the permit applications related to the Steve Road P.D. site. The trial court "retain[ed] jurisdiction of the permit applications of Thomas as to the Kate Bond P.D., Crossroads Ford, Steve Road P.D., and Perkins Road permit applications." The trial court awarded Thomas

---

[14]A case involving the permit applications related to the Southern Millwork site was pending in the Davidson County Chancery Court, and permit applications related to the Wolf River site had been resolved in a proceeding in a different Part of the Shelby County Chancery Court.

[15]In the findings of fact and conclusions of law, the trial court had stated that the rule prohibiting the placement of a new billboard within 1000 feet of an existing billboard appeared to be "arbitrary and void." At the hearing, the State informed the trial court that this rule was established by state regulation, not by local practice. The trial court revised its finding to declare that an internal procedural standard used by TDOT was arbitrary and void. This appears to be the only variation between the original findings of fact and the final order entered by the trial court.

$10,000 in attorney fees as appropriate damages and sanctions against TDOT for its failure to comply with the orders of the trial court. The trial court certified the March 19, 2008 order as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, noting that "there is still pending Thomas' complaint for unlawful taking filed July 27 [sic], 2007." On April 17, 2008, the State filed its notice of appeal.

On the day the State filed its notice of appeal and thereafter, Thomas filed a series of post-judgment motions and applications for relief in the trial court. Over the State's objection, Thomas was permitted to take the deposition of the TDOT Commissioner regarding Thomas's continued allegations of contempt. On August 20, 2008, the trial court heard all of Thomas's post-trial motions. On September 23, 2008, the trial court entered an order denying Thomas's post-trial motions; however, it required TDOT to convene a contested case hearing related to permit applications filed by Thomas over which the trial court had not previously exercised jurisdiction, related to the Janice Dunn site. In addition, TDOT was ordered to pay Thomas $16,135.63 in discretionary costs. The State filed a supplemental notice of appeal from the September 23, 2008 order.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the State raises several issues for our review. It argues that the trial court erred in denying the State's motion to dismiss Thomas's counterclaim for lack of subject matter jurisdiction or based on the doctrine of sovereign immunity. It contends that the trial court erred in granting Thomas injunctive relief against TDOT and in finding that TDOT violated the injunctive orders. The State maintains that the trial court erred in asserting jurisdiction over Thomas's TDOT billboard permit applications and the related administrative proceedings, and in assessing sanctions and discretionary costs against TDOT.

We perceive the determinative issue to be whether the trial court had subject matter jurisdiction to adjudicate the claims for relief asserted in Thomas's counterclaim and Thomas's subsequent requests that arose from the counterclaim. Whether subject matter jurisdiction exists is a question of law, and we review the trial court's decision on this issue *de novo*, affording it no presumption of correctness. ***Northland Ins. Co. v. State***, 33 S.W.3d 72, 729 (Tenn. 2000).

### ANALYSIS

The State argues that the trial court's May 22, 2007 order and any subsequent order arising out of Thomas's counterclaim are void and should be vacated, because the trial court did not have subject matter jurisdiction to adjudicate those claims. Rather, the State argues, Thomas's counterclaims, as well as his later requests for injunctive relief, sought affirmative relief from the denial of billboard permit applications that were in various stages of the

-14-

administrative process. The trial court's assertion of jurisdiction over these claims was improper, the State argues, because subject matter jurisdiction over the administrative matters rested exclusively in the Davidson County Chancery Court pursuant to the UAPA, Tennessee Code Annotated § 4-5-322(b)(1). It contends that the trial court incorrectly relied on Tennessee Code Annotated § 20-4-107, because (1) the statute relates to venue, not subject matter jurisdiction, and (2) Thomas's lawsuit was not a suit "involving" real property; rather, it is a lawsuit about the disposition of billboard permits. *See Southwest Williamson County Comm. Ass'n v. Saltsman*, 66 S.W.3d 872 (Tenn. Ct. App. 2001). It also maintains that the trial court erred in relying on Rule 13 of the Tennessee Rules of Civil Procedure because it cannot be used to enlarge the right to assert claims against the State. Therefore, the State argues, because the trial court did not have subject matter jurisdiction over the affirmative claims for relief raised by Thomas, then the orders granting Thomas the relief requested are void.

In response, Thomas emphasizes the trial court's numerous factual findings, detailing instances in which TDOT officials engaged in unethical conduct and in selective, biased, and vindictive enforcement of the billboard regulations against him. He contends that TDOT remains in contempt of the trial court's orders. Thomas asserts that TDOT should not be permitted to come before this Court while it remains in contempt of the trial court orders.

Thomas does not dispute that the UAPA specifies that petitions for judicial review of TDOT administrative proceedings are to be filed in the Davidson County Chancery Court. He argues, however, the trial court correctly found that this case is governed by Tennessee Code Annotated § 20-4-107, applicable to cases "which involve[] real property." Based on the plain language of this statute, Thomas argues, the trial court properly exercised jurisdiction over his counterclaim. He distinguishes the *Saltsman* case, cited by the State, because Thomas's claims involve single, identifiable parcels of property in Shelby County. Thomas asserts that the State's action in filing the initial petition for injunctive relief opened the door to his defenses and counterclaims based on selective or vindictive enforcement of government regulations. He also contends that the Shelby County court can issue injunctive relief where a bona fide defendant resides there, namely, third-party defendant Shelby County.

"The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). "Subject matter jurisdiction involves the nature of the cause of action and the relief sought and can only be conferred on a court by constitutional or legislative act." *Northland Ins. Co.*, 33 S.W.3d at 729 (citations omitted). Thus, whether a court has subject matter jurisdiction to hear a particular controversy depends upon the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994).

Under the Tennessee Constitution, the State can be sued only as directed by the General Assembly by statute. Art. 1, Section 17, Tenn. Constitution. Under Tennessee Code Annotated § 4-4-104(a), "the General Assembly has clearly prescribed that a suit against a commissioner in his or her official capacity, *i.e.*, a suit against the State, must be brought in Davidson County." *Saltsman*, 66 S.W.3d at 881. Section 4-4-104(a) provides:

> Each department shall maintain a central office at the capitol, which shall be the official residence of each commissioner, or head of department.

T.C.A. § 4-4-104(a)(2005). The effect of this statute "is to establish the [TDOT] Commissioner's official residence at the 'central office' of TDOT 'at the capitol' in Davidson County." *Saltsman*, 66 S.W.3d at 881. Generally, "a commissioner or head of a department of state government may be sued as such only in the county of his official residence." *Id.* (quoting *Delta Loan & Fin. Co. v. Long*, 336 S.W.2d 5, 6 (Tenn. 1960)).

Moreover, the UAPA specifies the procedure for judicial review of a "contested case"[16] and specifies which court may conduct such a judicial review:

> (a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review.
>
> * * *
>
> (b)(1)(A) Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute.

T.C.A. § 4-5-322(a)(1) and (b)(1)(A) (2005). Thus, this statute provides that a person aggrieved by an agency adjudication, *i.e.*, decision in a contested case, may obtain judicial review of the decision *only* under the UAPA, and *only* by filing a petition in the Davidson County Chancery Court, "unless another court is specified by statute." *Id.*

In asserting that the trial court had jurisdiction to hear his defenses and counterclaim against TDOT, Thomas in effect argues that his counterclaims fall within the exception, "unless another court is specified by statute." *Id.* He relies first on Tennessee Code Annotated § 20-4-107, which provides:

> Notwithstanding any other law or rule of procedure to the contrary, any action the subject matter of which involves real property in which this state, or any

---

[16]Basically, a "contested case" is an agency adjudication. *See* T.C.A. § 4-5-102(3) (definition of contested case).

agency of this state, is a party, may be properly instituted in any county in which the property is located.

T.C.A. § 20-4-107 (2009). Thomas contends that the resolution of his claims and defenses against TDOT determines whether Thomas can use his Shelby County property in a way that is economically beneficial. In this way, he argues, they "involve[] real property" and, under Section 20-4-107, may be asserted against TDOT in Shelby County.

We respectfully disagree. First, Section 20-4-107 "addresses venue and does not confer subject matter jurisdiction." *Williams v. Nicely*, 230 S.W.3d 385, 391 n.6 (Tenn. Ct. App. 2007).[17] The Tennessee Supreme Court has explained that venue and subject matter jurisdiction are separate and distinguishable:

> Subject matter jurisdiction and venue are two separate concepts. Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy. *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994). It relates to the nature of the cause of action and the relief sought. *Id.* It is generally defined by the constitution or statute and conferred by the authority that organizes the courts. *Cooper v. Reynolds*, 77 U.S. (10 Wall.) 308, 19 L.Ed. 931 (1870); *Turpin v. Conner Bros. Excavating Co., Inc.*, 761 S.W.2d 296 (Tenn.1988). Here, there is no question that the Circuit Court for Knox County has subject matter jurisdiction over this action. Tenn. Code Ann. § 29-16-104 (1980 Repl.). Further, there is no question that the court has personal jurisdiction over the parties.
>
> Venue, on the other hand, is a concept based on privilege of and convenience to the parties. *Turpin v. Conner Bros. Excavating Co., Inc.*, 761 S.W.2d at 297. It is generally not a condition precedent to the court's power, but relates instead to the appropriateness of the location of the action. While there is much debate regarding the connectedness between the two concepts, our rules of civil procedure have clearly distinguished between the two. Improper venue is a matter which is waived unless contested in the first pleading. Tenn. R. Civ. P. 12.08. Subject matter jurisdiction, on the other hand, cannot be waived, because it is the basis for the court's authority to act. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn.1994).

---

[17]Tennessee Code Annotated § 20-4-107 is contained in Title 20 on Civil Procedure, Chapter 4 on Venue, and within Part 1 - Venue of Actions. In this appeal, the parties and the trial court below refer to it as a venue statute.

*Meighan*, 924 S.W.2d at 639 (footnote omitted). Thus, subject matter jurisdiction addresses the court's authority to hear a case, while venue is based on the convenience of the parties. As noted above, the issue in this appeal is whether the General Assembly has conferred authority on the Shelby County Chancery Court to hear Thomas's claims against TDOT, *i.e.*, whether the Shelby County Chancery Court has subject matter jurisdiction. Section 20-4-107, as a venue statute, does not address the trial court's subject matter jurisdiction. *Williams*, 230 S.W.3d at 391 n.6.

Moreover, Section 20-4-107 is not applicable to Thomas's claims against TDOT. As noted above, the statute states that it applies to legal proceedings in which "the subject matter . . . involves real property." T.C.A. § 20-1-107. Any involvement of real property in Thomas's claims against TDOT is tangential at most; the thrust of his claims are that TDOT officials acted in an unfair manner toward him with respect to his applications for billboard permits.

A similar situation was presented in the *Saltsman* case, cited by TDOT. In *Saltsman*, Williamson County landowners petitioned the Williamson County Chancery Court to issue an injunction and writ of mandamus directing TDOT and its Commissioner to halt construction work on State Route 840 and to perform additional studies before proceeding. TDOT argued that the trial court did not have subject matter jurisdiction; it contended that the petition was "a suit against a commissioner in his or her official capacity, *i.e.*, a suit against the State," and therefore had to be brought in Davidson County. *Saltsman*, 66 S.W.3d at 881. The trial court held that it had subject matter jurisdiction, based in part on its finding that the lawsuit involved real property and was proper in the county where the real property was located, pursuant to Section 20-4-107. The trial court then issued a lengthy injunctive order, directing the TDOT Commissioner to perform numerous specified duties and "enjoining the Commissioner and others from doing various and sundry things with respect to Route 840." *Id.* at 876. TDOT appealed.

On appeal, this Court reversed and dismissed the case in its entirety for lack of subject matter jurisdiction. The dismissal was based in part on the appellate court's finding that the case was not about real property:

> In the instant case, it is clear beyond any doubt that the petition, as amended, seeks an order from the trial court directing the Commissioner to perform the duties alleged to be incumbent upon him as they pertain to the planning for, and the construction of, Route 840 through southwest Williamson County. The trial court recognized the thrust of the petition-a petition that it granted "in its entirety." It agreed with the petitioners that the Commissioner had certain legal duties pertaining to Route 840 in Williamson County and that he was not meeting his responsibilities with respect to those duties. The trial court remedied this perceived breach of duty by ordering the Commissioner to

-18-

properly perform his duties and, to the extent his duties are discretionary in nature, to perform them without abusing his discretion. The court then halted all work on Route 840 in Williamson County until the Commissioner had done that which he was ordered to do.

This is not a suit about real property. It is a suit seeking to require a commissioner of a department of the State of Tennessee to do his job. Therefore, the Williamson County Chancery Court cannot rely upon T.C.A. § 20-4-107 . . . to sustain its jurisdiction in this case. [That] statute[] simply do[es] not apply to the cause of action attempted to be asserted in the petition.

*Id.* at 880. Thus, the *Saltsman* Court found that the petition, in essence, sought to require the TDOT Commission "to do his job." It held that the fact that the extension of Route 840 may impact property in Williamson County did not make the lawsuit an action "the subject matter of which involves real property." *Id.* (quoting Tennessee Code Annotated § 20-4-107). Thus, the trial court's judgment was deemed void and of no effect. *Id.* at 882.

Here, Thomas's counterclaim asserts that TDOT acted unfairly toward him in its treatment of his billboard permit applications in a variety of ways, such as applying TDOT regulations to him but not to his competitors, refusing to grant him administrative hearings on the denial of his permit applications, and in disparaging him to his business associates. Thus, Thomas essentially seeks to have the trial court require the TDOT Commissioner "to do his job" without bias or vindictiveness toward him. *Id* at 880. The trial court's extensive findings and orders reflect a similar focus; the trial court asserted continuing jurisdiction over the administrative proceedings on several of Thomas's billboard permit applications in order to monitor whether TDOT performed its duties and treated Thomas in the manner prescribed by the court. Thus, Thomas's claims against TDOT do not involve real property and Section 210-4-107 does not apply. *Id.*; *see also Barry v. Comm'rs of Commerce & Ins.*, No. 01A01-9404-CH-00156, 1994 WL 485588, at *1-*2 (Tenn. Sept. 9, 1994) (finding Section 20-4-107 inapplicable because gravamen of complaint was right to practice unlicensed architecture); *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434 (Tenn. Ct. App. 1999) (finding Section 20-4-107 inapplicable because the gravamen of the complaint related to the right to engage in unlicensed real estate brokering, not the real estate itself).[18]

---

[18]Thomas cites *Carter v. Olson*, 660 S.W.2d 483 (Tenn. 1983), in support of his assertion that Section 20-4-107 confers jurisdiction on the trial court to hear his claims. Discussing *Carter*, the court in *Saltsman* observed that the Supreme Court, in relating the history of the case, noted that the trial court had relied on Section 20-4-107 as authority for its jurisdiction, but did not discuss the question of subject matter jurisdiction. *Saltsman*, 66 S.W.3d at 879. We agree and find *Carter* inapplicable to this case.

Thomas contends that "TDOT has waived any objections to Thomas's counterclaim being filed in Shelby County, as TDOT originally filed suit against Thomas" in Shelby County. Venue objections can be waived, of course, and venue can be negotiated or consented to by the parties; subject matter jurisdiction, on the other hand, either exists or it does not. "Parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver." *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

Thomas also asserts on appeal that the trial court had subject matter jurisdiction because Shelby County, a co-defendant by virtue of his third-party complaint, is a "bona fide material local defendant." Thomas cites *Mitchell v. Carmichael*, 522 S.W.2d 869 (Tenn. 1975), which held that it might be possible, where the State does not object, that the State may be joined as a defendant in a county other than Davidson County if there are "bona fide and material local defendants" that reside in the forum county, despite the fact that the State "resides" in Davidson County.

We find the *Mitchell* case to be inapplicable to the case at bar. First, in the instant case, the State obviously objects.[19] Second, it is clear from the record that Shelby County is not a "bona fide material local defendant." Although the third-party complaint names Shelby County as the third-party defendant, the claims asserted therein all relate to actions of the State. Indeed, in the motion for leave to file the third-party complaint and even in the complaint itself, Thomas acknowledges that Shelby County is named as a defendant merely as a subterfuge to avoid dismissal under the doctrine of sovereign immunity.[20] Therefore, the illusory naming of Shelby County as a third-party defendant provides no basis for finding that the trial court has subject matter jurisdiction over Thomas's claims.[21]

Thomas argues that he asserted his claims of selective and vindictive enforcement merely as "an affirmative defense and defensive counter-claim." He cites *Moore v. Tate*, 111 S.W. 935 (Tenn. 1889), for the proposition that "when the state voluntarily places itself in the position of a suitor, . . . so far as concerns all proper matters for adjudication growing out of the cause

---

[19]Although the discussion in *Mitchell* is unclear, the discussion likely relates to venue, because the parties cannot consent to subject matter jurisdiction and it is not waivable.

[20]The third party complaint states: "As a result of the Doctrine of Sovereign Immunity under Tennessee law, Thomas brings this cause of action for unlawful taking against Shelby County for the actions of the State of Tennessee as described herein."

[21]The Rule 54.02 certification of the final judgment in this case did not include the disposition of the third-party complaint against Shelby County, so we address the third-party complaint only in response to Thomas's arguments regarding the trial court's jurisdiction over his counterclaims.

of action sued on, . . . the defendant would be entitled to plead and prove any and all matters properly defensive. . . ." *Moore*, 111 S.W. at 936.

In *Moore*, decided in 1889, the State of Alabama filed suit in Shelby County, Tennessee, on an indebtedness. The defendants sought to plead set-off based on bond coupons. *Id. Moore* was later interpreted by the Tennessee Supreme Court as being limited to circumstances in which the State had consented to be countersued in response to the State's original petition. *See State ex rel. Moulton v. Williams*, 343 S.W.2d 857 (Tenn. 1961) (holding that the State's petition for an injunction did not remove the State's sovereign immunity and, thus, trial court was without jurisdiction over the defendant's counterclaim). Obviously, the State in this case does not consent to Thomas's counterclaims, and so the holding in *Moore* is inapplicable.

Moreover, *Moore* is also inapplicable because, in this case, it is clear that the matters asserted by Thomas in his defenses and counterclaims are not "properly defensive" to the State's original petition in this case. The provisions of the Billboard Regulation and Control Act are clear and unequivocal. Tennessee Code Annotated § 54-21-104(a) provides:

> Unless otherwise provided in this chapter, no person shall construct, erect, operate, use, maintain, or cause or permit to be constructed, erected, operated, used, or maintained, any outdoor advertising within six hundred sixty fee (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems without first obtaining from the commissioner a permit and a tag.

T.C.A. § 54-21-104(a) (2008). Thus, in the absence of a State permit and tag, the Act flatly prohibits the erection or construction of a billboard structure within 660 feet of an interstate highway right-of-way, "unless otherwise provided in this chapter." *Id.* In the event of a violation of Section 54-21-104, the next section of the Act provides:

> (a)(1) Any person, either owner or lessee, of any outdoor advertising who has failed to act in accordance with § 54-21-104 shall remove the outdoor advertising immediately.
> (2) Failure to remove the outdoor advertising shall render the outdoor advertising a public nuisance and subject to immediate disposal, removal or destruction.

T.C.A. § 54-21-105(a)(1) and (2) (2008). Therefore, the Act deems outdoor advertising constructed or erected without a permit to be a public nuisance, and mandates immediate removal by the owner of the outdoor advertising.

Mirroring the provisions of the Act, the State's petition for injunctive relief against Thomas alleged that, despite having been denied a permit, he was erecting a billboard at the Crossroads Ford site, immediately adjacent to the Interstate 40 right-of-way, in violation of Section 54-21-104. The petition asked the trial court to adjudge the billboard to be a public nuisance under Section 54-21-105, and to require Thomas to remove it immediately at his own expense, as required under the same section. The petition asked that any revenues Thomas received for use of the illegal billboard be placed in a constructive trust.[22]

The Answer to the State's petition filed by Thomas admitted that he had not obtained a TDOT permit for a billboard at the Crossroads Ford site and attached a photo of the billboard structure that had been partially constructed on that site. Likewise, at the first evidentiary hearing before the trial court, Thomas admitted that construction of a billboard without a permit was illegal under State statutes, that he did not have a TDOT permit for a billboard at the Crossroads Ford site, and that he hired contractors who in fact had begun construction of a billboard on the Crossroads Ford site. Nowhere in the blizzard of pleadings filed by Thomas or in the multiple hearings did Thomas claim that construction of a billboard at the Crossroads Ford site fell within the "unless otherwise provided in this chapter" exception to the Act's blanket prohibition against erecting a billboard without a permit.[23]

Because the Act flatly prohibits the erection of outdoor advertising without a State permit, the entirety of Thomas's defenses and counterclaims are irrelevant to the State's petition for

---

[22]Effective in June 2009, the General Assembly amended the Act to expressly provide for this remedy. The amendment specifies that TDOT may file a petition to establish such a constructive trust in the chancery court for the county in which the illegal structure is located, but limits the court's jurisdiction to issuing appropriate enforcement orders with respect to subsection (c)(7):

> (7) All gross revenues received or payable from the operation of any outdoor advertising device erected without first obtaining a permit as required under § 54-21-106 are subject to being forfeited to the state and placed in the highway fund for the administration of this chapter or any other purpose authorized under § 54-21-106. For the enforcement of this subdivision (c)(7), the department may file a petition in the chancery court for the county in which the unlawful outdoor advertising device is or was located or in the county where the person erecting the device resides. In such case, the jurisdiction of the chancery court shall be limited solely to the authority to issue appropriate orders for the enforcement of this subdivision (c)(7), including, without limitation, the authority to establish a constructive trust for an accounting and receipt of revenues obtained from the operation of the unlawful outdoor advertising device.

T.C.A. § 54-21-105(c)(7) (Supp. 2009).

[23]Section 54-21-107 of the Act contains express exemptions to the requirements of section 54-4-104; these exemptions include billboards "advertising activities conducted on the property on which they are located" or "advertising the sale or lease of property on which they are located." T.C.A. § 54-21-107(a)(1) and (2).

injunctive relief. Unless Thomas fits within one of the exceptions named in the Act, if he does not have a State billboard permit, he is not allowed to erect a billboard. Period. Therefore, none of the defenses or counterclaims asserted by Thomas can be considered as "properly defensive" to the State's petition. Thus, this argument in favor of a finding that the trial court had subject matter jurisdiction over Thomas's counterclaim is without merit.

As to the matters alleged in Thomas' counterclaim and other pleadings, he is not left without a remedy. The UAPA provides that any person aggrieved by an administrative body's final decision in a contested case may seek judicial review of that decision. T.C.A. § 4-5-322. The decision of an administrative body not to hold a contested case hearing is subject to judicial review under the UAPA just as if a contested case hearing had been held. *See Armstrong v. Tenn. Dep't Veteran's Affairs*, 959 S.W.2d 595, 600 (Tenn. Ct. App. 1997). A "contested case" is "a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing." T.C.A. § 4-5-102(3) (2005 & Supp. 2009). Furthermore, if a permit applicant requests a declaratory order from TDOT, and TDOT refuses to issue such an order, the applicant may file a petition for a declaratory judgment. *See* T.C.A. § 4-5-225(a) (2005). However, the General Assembly has specified that the *only* trial court with subject matter jurisdiction over any of these types of claims is the Chancery Court in Davidson County. *See* T.C.A. §§ 4-4-104(a), 4-5-322(b)(1)(A), & 4-5-225(a); *see Doe v. Hattaway*, No. E2001-02732-COA-R3-CV, 2002 WL 1400057, at *2-3 (Tenn. Ct. App. June 28, 2002); *Saltsman*, 66 S.W.3d at 880. Thus, the defenses, claims, and requests for relief asserted by Thomas in the trial court below may only be heard in Davidson County.[24]

In summary, we hold that the Shelby County Chancery Court was without subject matter jurisdiction, *i.e.*, without authority, to hear the counterclaims and other requests for relief

---

[24]In June 2009, the General Assembly amended T.C.A. § 54-21-105 to clarify that jurisdiction lies exclusively in Davidson County:

> (d) Notwithstanding any other law to the contrary, in any case or controversy arising from any regulatory or enforcement action taken by the commissioner or department under § 54-21-105 or this chapter, wherein any cause of action, claim, counterclaim, cross-claim or any other claim or request for remedy whatsoever is asserted against the state, the commissioner, the department or any official or employee thereof, jurisdiction shall be vested exclusively in the chancery court for Davidson County; provided, that any contested case hearing with respect to the issuance, denial, nonrenewal or voiding of any outdoor advertising permit shall remain under the jurisdiction of the commissioner in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.

T.C.A. § 54-21-105(d) (Supp. 2009).

asserted by Thomas in this case. It necessarily follows, then, that the judgment of the Shelby County Chancery Court below is void and of no effect. *See Saltsman*, 66 S.W.3d at 882.

In the trial court's orders in this case, we find no provision addressing the State's request for relief in its original petition, apart from a consent order early in the proceedings agreeing to dissolution of the TRO granted when the State's petition was initially filed. From the context of the proceedings, we find that the trial court implicitly denied the State's petition in its entirety.

However, it is unclear from the record whether Thomas's construction of a billboard at the Crossroads Ford site was ever completed, or whether Thomas removed the partial structure that had been erected, or whether the State's original request for relief has been otherwise mooted.[25] If the State's request for relief remains viable, our holding in this case obviously changes the landscape of the litigation dramatically. Therefore, we must remand the cause to the trial court for reconsideration of the State's petition in light of this Opinion.

## CONCLUSION

The decision of the trial court is reversed in its entirety, the counterclaim is dismissed, and the case is remanded for further proceedings consistent with this Opinion. Costs at the trial court level and on appeal are to be taxed against Appellee William H. Thomas, Jr., for which execution may issue if necessary

_____
HOLLY M. KIRBY, JUDGE

---

[25]In June 2009, the General Assembly amended T.C.A. § 54-21-105 to provide for the denial of billboard permits to any person who had erected a billboard without a permit. *See* T.C.A. § 54-21-105(c) (Supp. 2009). The amendment specifies that pending administrative proceedings is not a defense. *Id.* The purpose of the amendment is "both to deter unlawful conduct and to prevent any person from benefitting from unlawful conduct." T.C.A. § 54-21-105(c)(8).